DARNALL TRUCKING COMPANY, INC., *a Corporation, et al.* *v.* BURR H. SIMPSON, *Individually and as State Road Commissioner, et al.*

(CC 632)

Submitted October 15, 1940. Decided December 10, 1940.

*Brown, Jackson & Knight,* for plaintiffs.

*Clarence W. Meadows,* Attorney General, and *Price, Smith & Spilman,* for defendants.

KENNA, JUDGE:

Darnall Trucking Company, Inc., Contract Cartage Company, Gate City Transport Company, Inc., J. W. Propst, Jr., Inc., White Star Transit Company and Automobile Dealers Association of West Virginia filed their bill of complaint in the Circuit Court of Kanawha County against Burr H. Simpson, State Road Commissioner, C. C. Tallman, Superintendent of the Department of Public Safety, and Clarence W. Meadows, Attorney General, praying for an injunction restraining the defendants in their individual and official capacities from enforcing Chapter 88 of the Acts of the Legislature of 1939 so far as the activities of the complainants are concerned. The act in question has for its primary purpose prohibiting the use of "double deck" trucks for the transportation of automobiles upon the highways of this state. The last named plaintiff has a membership composed of automobile dealers and consignees of vehicles so shipped, and the

other plaintiffs are common carriers engaged in the interstate transportation of motor vehicles by means of the prohibited mechanism.

The defendants appeared and demurred to the bill of complaint, and, after sustaining the demurrer and by doing so holding the act of the Legislature to be constitutional and enforceable, the trial chancellor certified to this Court the following questions of law:

"1. Is Chapter 88 of the Acts of the Legislature of West Virginia, Regular Session of 1939, as applied to the plaintiffs, violative of the provisions of section 10 of Article III of the Constitution of West Virginia, and of section 1 of the Fourteenth Amendment to the Constitution of the United States, and of section 8 of Article I of said Constitution?

"2. Is said statute as applied to the plaintiffs a valid exercise of the police power of the State of West Virginia?

"3. Is the plaintiffs' bill without equity?"

The named act of the Legislature reads as follows:

"On and after July first, one thousand nine hundred forty, it shall be unlawful for any person to operate on the highways of this state:

"(a) A vehicle having two levels, for the carriage of other vehicles;

"(b) A vehicle carrying other vehicles, any of which is carried at a height of one hundred fifteen inches above the ground;

"(c) A vehicle carrying other vehicles, any part of which is above the cab of the carrier vehicle, or over the head of the operator of such carrier vehicle;

"(d) A vehicle carrying any other vehicle, any axle of which is more than three feet higher than any other axle on such carried vehicle.

"(e) The provisions of this act shall not apply to any vehicle transporting other vehicles used in construction or maintenance work or in the de-

velopment of power, coal, oil, natural gas or other minerals, or for agricultural purposes.

"Any person violating any one of the provisions of this section shall, upon conviction, be sentenced to pay a fine of twenty-five dollars and costs, or may be sentenced to jail for a period of not more than five days."

The bill of complaint, after alleging generally the business in which each complainant is engaged and that the carrier plaintiffs own and operate automotive vehicles which are especially designed to transport other vehicles in multiple units and that they are conducting their business by the operation of vehicles having two levels for the carriage of other vehicles which they carry at a height of more than one hundred and fifteen inches but not more than one hundred and fifty inches above the ground, approximately eighteen inches of the load extending above the rear part of the cab of the carrier vehicle and part of the load at times extending over the head of the operator of that vehicle, goes on to allege that the automobile so carried has no axle that is more than three feet higher than any other axle in the carried automobiles, and that the load has a maximum over all length of forty-two and one-half feet, and a width of eight feet, the carrying vehicle, when loaded, transporting four other vehicles, none of which are carried upon or over the cab of the carrier vehicles.

The bill alleges that the carrier complainants are engaged extensively in interstate commerce and that in order for them to continue in business it is imperative that they be permitted to pursue their present method.

According to the allegations of the bill of complaint, the conduct of the business of the carrier plaintiffs is well within the general requirement of the statute of weights and dimensions for vehicles permitted upon West Virginia highways (Code, 17-8-19, as amended), the validity of which is not questioned, so that the only legal questions confronting us in this proceeding concern the validity of Chapter 88 of the Acts of 1939.

The bill of complaint alleges that the carrier plaintiffs have each applied to the Interstate Commerce Commission for Certificates of Public Convenience and Necessity and are therefore lawfully entitled to engage in interstate transportation and that the Interstate Commerce Commission, by virtue of the Motor Carrier Act of 1935 as amended (c. 498, 49 Stat. at L. 543; c. 811, 52 Stat. at L. 1236; 49 U. S. C. A. c. 8), is given full and paramount power to promulgate and enforce rules and regulations governing the safe conduct of their business, with all of which requirements they have carefully complied, as well as with the safety requirements of the several states in which they operate.

The bill goes on to allege that the vehicles carried by the carrier plaintiffs are intended for practically all uses and purposes, and that they do not know and have no way of ascertaining in what way any of the transported vehicles shall be used or for what purpose they are used at the time of transportation. The bill contains an allegation that the operation of the carrier plaintiffs' equipment in the manner and method described in the bill is safe and not hazardous, and that they can continue to operate in that manner.

The bill then sets out verbatim Chapter 88 of the Acts of the Legislature, 1939, herein copied.

After alleging in detail the irreparable damage that the enforcement of the act will inflict upon all of the plaintiffs, the bill of complaint particularizes the legal reasons for considering the legislation unconstitutional and concludes with a prayer for injunctive and general relief.

The contention of the appellants, complainants below, is that the Circuit Court of Kanawha County erred in withholding the injunctive relief prayed for because Chapter 88 of the Acts of 1939 (1) is an improper exercise of the police power of the State of West Virginia; (2) violates section 1 of the Fourteenth Amendment of the Constitution of the United States, and section 10 of Article III of the Constitution of West Virginia; (3) subjects them and persons in like situation engaged in interstate commerce

to unreasonable and undue burdens in violation of Article I, section 8 of the Constitution of the United States; (4) is invalid because it attempts to put into effect discriminatory classifications which are unreasonable, unnecessary and arbitrary; and (5) is unenforceable because of its vague, indefinite and uncertain language.

With the single exception of the exemptions contained in section (e) of the act in question constituting a violation of the equal protection clause, our inquiry has resulted in the conclusion that the Supreme Court of the United States necessarily passed upon all of the constitutional questions involved here in the case of *Maurer* v. *Hamilton*, 309 U. S. 598, 60 S. Ct. 726, 84 L. Ed. 671, and in sustaining the validity of the Pennsylvania statute before it in that case had before it questions so similar, if not identical, to those arising upon this record as to preclude their consideration here. We do not think that the contention of appellants that the *Maurer* case involved nothing more than a question of "load-over-cab" is tenable. The Pennsylvania statute dealt primarily, as does the West Virginia statute, with a type of vehicle accustomed to carrying a "top heavy load", although the provision concerning "load-over-cab" was the applicable provision before the court in the *Maurer* case. The Pennsylvania statute was a brief general act of the legislature, the provisions of which were interrelated in a way that placed the whole act before the Supreme Court of Pennsylvania (336 Pa. 17, 7 Atl. (2d) 466), and the Supreme Court of the United States when the constitutional validity of any part was attacked. See Justice Hughes' discussion in *Smith* v. *Cahoon*, 283 U. S. 553, 563, bottom 51 S. Ct. 582, 75 L. Ed. 1264. We think that a reading of the two opinions prevents a different conclusion.

In the *Maurer* opinion, the Supreme Court, in dealing with the constitutional questions, observed that they had been recently before it in the case of *South Carolina State Highway Department* v. *Barnwell Brothers, Inc.*, 303 U. S. 177, 58 Sup. Ct. 510, 82 L. Ed. 734, and in that opinion will be found an exhaustive discussion. The appellants under-

take to distinguish the *Maurer* and the *Barnwell* cases from the pending case by calling attention to the fact that the legal questions now before us arise upon demurrer, and that in both of the cases referred to, there was a finding of fact after a thorough inquiry, and in order to emphasize the difference, comment upon the fact that the bill of complaint in the pending case alleges without qualification that the vehicles operated by the carrier appellants and their load are safe, and that on demurrer an allegation of fact in the paper being tested must be treated as admitted. The appellees counter by contending that the statement that the method of operation is safe is not an allegation of fact, but is only a matter of opinion, contradicted by general information of which this Court takes judicial notice as illustrated by the statement made by Justice Stone in the *Maurer* opinion that "Motor vehicles are dangerous machines whose operation is attended by serious hazards to persons and property." Safety is entirely too variant and relative to be regarded as settled fact.

Undoubtedly, the West Virginia act is primarily a safety measure, although the conservation of the highways and their proper use in national defense may be more than incidentally involved in the legislative purpose. Being a safety measure, unless the classification by the Legislature of the vehicles dealt with is affirmatively shown to have been plainly unreasonable and arbitrary, it lies beyond the power of the courts to interfere therewith. *South Carolina State Highway Department* v. *Barnwell Brothers, Inc.*, 303 U. S. 177, 58 Sup. Ct. 510, 82 L. Ed. 734.

The remaining question is whether section (e) of the act providing certain exemptions constitutes an arbitrary discrimination and for that reason renders the act unconstitutional.

It would seem that appellants rely largely, if not entirely, upon the holding of the Supreme Court in *Smith* v. *Cahoon*, 283 U. S. 553, 565, 51 S. Ct. 582, 75 L. Ed. 1264. The *Cahoon* case involved the validity of an act of the Florida

Legislature applying to "auto transportation" companies which contained the following exemptions:

> "Provided, That the term 'auto transportation company' as used in this Act shall not include corporations or persons engaged exclusively in the transportation of children to or from school, or any transportation company engaged exclusively in the transporting agricultural, horticultural, dairy or other farm products and fresh and Salt Fish and Oysters and Shrimp from the point of production to the assembling or shipping point enroute to primary market or to motor vehicles used exclusively in transporting or delivering dairy products or any transportation company engaged in operating taxicabs, or hotel busses from a depot to a hotel in the same town or city."

Based upon the fact that the exemptions drew an arbitrary distinction between carriers habitually using the Florida highways, the Supreme Court held the Florida act unconstitutional. Chief Justice Hughes wrote the opinion in the *Cahoon* case as he did in the case of *Sproles* v. *Binford,* 286 U. S. 374, 394, 52 S. Ct. 581, 76 L. Ed. 1167, which involved the constitutionality of certain exemptions contained in an act of the Texas Legislature which the Supreme Court held valid. In the *Sproles* case, the distinction between the habitual and general use, and the occasional and limited use, of highways is pointed out, and the right of the legislature to classify so that an arbitrary distinction is not discernible, is sustained.

The same distinction is drawn by Justice Hughes in the case of *Hicklin* v. *Coney,* 290 U. S. 169, 175, 54 S. Ct. 142, 78 L. Ed. 247.

We are of the opinion that the distinction pointed out in the *Sproles* and *Hicklin* cases is applicable to the present case. The exemptions in paragraph (e) of the act before us apply to "any vehicle transporting other vehicles used in" etc., naming the different uses. Counsel for appellants contend that the carriers they represent transport vehicles the eventual use of which cannot be ascertained and that many of them will be put to the exempted uses

named in the act, and, consequently, that it is impossible to determine whether their business is in violation of the act or is subject to the named exemptions. This would be true only if the word "used" applied to new and unused vehicles, and if so construed, it would render the entire act meaningless, its provisions being inseparable.

A cardinal principle of constitutional law is that a provision subject to more than one construction should be held to the meaning that assures its constitutionality, if there is doubt. 1 Cooley's Constl. Lim. (8th Ed.) 376; 25 R. C. L. 1000. To say that the word "used" literally construed applies to used vehicles and not to unused vehicles strikes us as being well nigh manifest, and as at least being a permissible construction if the constitutionality of the act depends upon it. We believe that the language of the act contemplates, and contemplates only, the permissible transportation of vehicles which have been already used and are then intended for immediate future use in the named ways, and that being so construed, the exemptions cover only occasional and limited uses of the state highways.

It is not feasible to discuss in detail the numerous questions dealt with in the briefs, but we believe that practically all of them will be found treated and their relationship hereto made apparent by the cases cited. The allegations concerning the financial damage and hardship inflicted upon the complainants we believe are to be considered in the light of the fact that the use of public highways for private profit is a privilege, and not a right, and that at the inception of their business ventures plaintiffs were charged with knowledge that the course of conduct they pursued was and is subject to the state's paramount right to reasonably regulate their conduct as well as the use of the public roads. A discussion of the state's police power, there being no other constitutional question involved, we believe is entirely unnecessary. We regard the interrelation of empty vehicles of a certain class and loaded vehicles of the same class as justifying the two to be treated as inseparable by the lawmaking body, the

"load" being the logical outgrowth of the "empty", so that forbidding the unloaded vehicle the use of the highways is justified as an enforcement measure, if not otherwise.

Based upon the foregoing discussion, the first interrogatory certified by the trial chancellor is answered in the negative; the second in the affirmative, as is the third. The cause will be remanded for further proceedings.

*Affirmed; remanded.*