STATE OF WEST VIRGINIA, *ex rel.* ALFRED W. SCHROATH, *et al.*

*v.*

JOSEPH P. CONDRY, COMMISSIONER OF MOTOR VEHICLES OF
WEST VIRGINIA

(No. 10664)

Submitted April 13, 1954. Decided May 18, 1954.

*Steptoe and Johnson, Oscar J. Andre, Eugene G. Eason,* for relators.

*John G. Fox,* Attorney General, *T. D. Kauffelt,* Assistant Attorney General, for respondent.

LOVINS, JUDGE:

Alfred W. Schroath, Frederick W. Schroath and James G. Curran, partners, trading and doing business under the name of Fleet Rental Company, hereinafter referred to as relators, seek a writ of mandamus to compel Joseph P. Condry, Commissioner of Motor Vehicles of West Virginia, hereinafter designated as Commissioner, to issue a Class A automobile registration and license plate for a certain automobile owned by the relators and leased to The Union National Bank of Clarksburg. The Commissioner refused to issue a Class A automobile registration card and license plate on the ground that the relators are not entitled to such Class A registration card and license plate, but are entitled to a Class U registration card and license plate.

The issue in this case arises upon the following undisputed facts: Relators are residents of Harrison County, West Virginia, and are engaged in the business of leasing or renting new passenger automobiles and trucks for terms of one year or longer to individuals and business organizations for use of such motor vehicles in the business of the lessees. Secondhand motor vehicles are not rented. Rentals of these motor vehicles are payable monthly, in fixed amounts, regardless of the number of miles the vehicles are driven.

The relators do not offer to lease to the public generally

and the general public has no right to demand that the relators enter into a rental agreement with any group or members of any group of the general public. The rental agreements are made after selection, solicitation and negotiation of, and with prospective lessees as in the case of ordinary contracts. No motor vehicles are leased to persons engaged in the transportation of persons or property either as common or contract carriers.

The relators allege that they are engaged in a competitive business, that they have no franchise to rent vehicles to any person, and that the business is private and is similar to the business of selling motor vehicles. The title to the motor vehicle owned by the relators is in their name. Prior to this time, Class A or B registration card and license plate for each rented vehicle have been issued in the name of the Fleet Rental Company.

The vehicles are equipped with accessories and lettering, according to the specifications of the lessee and when delivered to the lessee, the vehicle may be used by such lessee as its own property, except as hereinafter stated. While in operation, the complete control is in the lessee during the term of the lease. It may be driven at such times and to such places and for such distance as the lessee desires.

The relators have no control over the vehicle and the use thereof, except the prohibition against using it for an unlawful purpose; its use in transporting property or persons for hire. The right to repossess the vehicle, however, for violation of the rental agreement, is reserved. In the operation of the vehicle, the lessee is entitled to possession of the vehicle during the time of the agreement, provided the lessee complies with the provisions of the agreement.

According to the information of relators, each rented vehicle is driven by a qualified driver of the lessee. None of such drivers is an employee of, or has any relationship with the relators. The driver receives his instruction as

to the operation of the vehicle from the lessee who pays such driver his wages.

In some of the leases, the relators do not agree to maintain and service the rented vehicles. Other leases may provide that the relators furnish gasoline, oil, garage facilities, washing, adjustments and repairs, or any one or more of such services provided for in the lease of the vehicle.

One of the relators negotiated a lease agreement with The Union National Bank of Clarksburg, West Virginia, hereinafter designated as the Bank. By that agreement, the relators agreed to furnish one motor vehicle to the Bank for its use in accordance with the terms of a written lease. The lease which is set forth in its entirety in the petition, provides in substance as follows: a Chevrolet automobile, described by motor number and serial number, was leased for two years, from February 8, 1954, until February 8, 1956, at a monthly rental of $124.20 per month, payable monthly.

The Bank agreed at the expiration of the lease to deliver the motor vehicle to the relator at the Bank's expense, in as good condition as said motor vehicle was in when received by the Bank, ordinary wear and tear excepted. In this lease, the Bank agreed to keep the motor vehicle in safe working condition and pay all taxes, fines, fees, operating costs and other expenses in connection with the leased vehicle; that the lessor may inspect it and thereafter the Bank should make all repairs found necessary on such inspection.

The relators agreed to provide a certificate of title and registration card and license plates in the name of the relators at the Bank's expense.

The Bank agreed to save the lessor harmless against all loss imposed by law resulting from the use and operation of the motor vehicle and "arising out of any cause whatever while said motor vehicle is in the possession and control of Lessee, its agents, servants, employees or

assignees or in the possession and control of any person with express or implied permission of Lessee."

The Bank also agreed to provide, maintain and pay for insurance covering the motor vehicle in certain amounts unnecessary to specify. The Bank has the right to use the leased vehicle for any lawful purpose except the Bank agreed that it would "not use nor permit said motor vehicle to be used for transportation for hire of property or passengers."

Other provisions of the lease set forth that the relators did not contemplate sale of the vehicle, conditional or otherwise; that the lease agreement may be assigned by the relators to any person or persons, but that the Bank should not assign the agreement or voluntarily relinquish possession and control of the vehicle without written consent of the relators or their assignees. Another stipulation in the lease provided for repossession of the leased vehicle and cancellation of the agreement in the event of a violation of the agreement or failure to pay rentals.

Relators obtained a certificate of title as the owner of the motor vehicle leased to the Bank, in accordance with the applicable statutory provisions, and thereupon applied in writing to the Department of Motor Vehicles of West Virginia for a Class A registration card and license plate; tendered the correct amount of cash to pay the fees for Class A registration, exhibited their certificate of title and made full and correct answers to the questions necessary to obtain a Class A license card and plate.

The Commissioner denied the request for Class A registration card and plate for the leased automobile. He based his refusal on the provisions of the statute that a Class A registration card and license plate could not be issued under the existing statute, but that the relators should obtain a Class U registration card and license plate after they had obtained a certificate or permit as required by Chapter 108, Article 6, Section 6, Acts of the Legislature, 1949, Regular Session. (Michie's Code, 1949, 24A-6-6).

The relators contend that the statute relied upon by the Commissioner of the Department of Motor Vehicles has no application to their business, since they are not engaged in the transportation of persons or property as a common or contract carrier, and that the vehicle rented by them to the Bank was not rented to a common or contract carrier, nor could such vehicle be lawfully used for those purposes by the Bank. Relators allege that they are deprived of their property without due process of law, in violation of the Fourteenth Amendment to the Constitution of the United States and Article III, Section 10 of the Constitution of West Virginia and are deprived of equal protection of the laws in violation of the Fourteenth Amendment, and Article VI, Section 30 of the Constitution of West Virginia; that the refusal of the respondent to issue Class A registration card and license plate is arbitrary and contrary to the statute.

The relators pray that a writ of mandamus be awarded requiring the Commissioner to issue to them a Class A registration card and license plate for the motor vehicle rented to the Bank, upon a proper application and payment of fees for such registration by the relators.

The defendant demurred to the petition upon the ground that relators are not entitled to a Class A registration and license plate for the reason that the petition shows upon its face that the vehicle described in the relators petition was a passenger motor vehicle rented for compensation, without a driver, and relator is therefore not entitled to a Class A registration card and license plate.

This proceeding was submitted upon the questions raised by the demurrer, briefs and oral arguments.

The regulation of motor vehicles relative to licensing and operation are based on statutory provisions. Chapter 126, Article 10, Section 1, Acts of the Legislature, 1953, Regular Session, (17A-10-1, 1953 Cumulative Supplement to Michie's Code, 1949), so far as pertinent reads as follows: "Vehicles subject to registration under the pro-

visions of this chapter shall be placed in the following classes for the purpose of registration: Class A. Motor vehicles of passenger type, other than those leased or operated for compensation; * * * Class U. Passenger motor vehicles rented for compensation without a driver."

Chapter 129, Article 10, Section 3, Acts of the Legislature, 1951, Regular Session, (17A-10-3, 1953 Cumulative Supplement to Michie's Code of 1949), provides that the fee for motor vehicle registration in Class U shall be $50.00. Section 5, Article 10 *id.* reads as follows: "The commissioner shall not register any Class * * * U vehicle unless the assessment for such vehicle provided for in section six, article six, chapter twenty-four-a of this code shall have been paid and notice of such payment shall have been received by the commissioner in the manner provided in said section. The commissioner upon registering a vehicle in any of the above classes shall certify to the Public Service Commission a written statement * * *", covering each vehicle registered which shall show the (1) number of the registration, (2) the date of registration, (3) the model of the registered vehicle, (4) its gross weight or seating capacity, (5) body type, motor or serial number and name of manufacturer, (6) name of the registrant.

Section six, article six, chapter twenty-four-a [§2577 (30)], referred to in the immediately preceding statute, so far as pertinent, reads as follows:

"In addition to the license fees, registration fees, or any other taxes required by law to be collected from motor carriers subject to this chapter, each such motor carrier shall be subject to, and shall pay to the public service commission, a special annual assessment for the purpose of paying the salaries, compensation, costs and expenses of administering and enforcing this chapter. All proceeds or funds derived from such assessment shall be paid into the state treasury and credited to a special fund designated public service commission motor carrier fund, to be appropriated as provided by law for the purposes herein stated. * * * The

special assessment against each motor carrier shall be apportioned upon the number and capacity of motor vehicles used by said carrier, computed as hereinafter provided. (a) For each identification card and plate $1.00 * * *".

A graduated scale of assessments from nine dollars to fifty-four dollars, based on the tonnage capacity of each vehicle up to ten tons, plus $4.50 per ton for each ton or capacity in excess of ten tons is set forth under sub-section (b) of the statute.

Sub-section (c) of the above statute provides for an assessment upon the tonnage capacity on a semitrailer. Sub-section (d) of the statute provides for the assessments of each motor vehicle or carrier in accordance with the seating capacity ranging from the seating capacity for ten passengers or less at $13.50 to a seating capacity of over forty passengers at $54.00. Sub-section (e) of the statute provides that the assessments of each motor carrier shall be paid on or before the first day of July of each year. Additional assessments are provided for. Sub-section (f) of the statute provides as follows: "Upon payment by any motor carrier of the assessment provided for, the public service commission shall advise the state road commission [the Department of Motor Vehicles] by notice in writing that such assessment has been paid, whereupon the state road commission [Department of Motor Vehicles] may issue motor vehicle license for the vehicles described in said notice. * * *". Sub-section (g) requires certain administrative action by the public service commission, not pertinent to this inquiry. Chapter 108, Article 6, Section 6, Acts of the Legislature, 1949, Regular Session. (Michie's Code, 1949, 24A-6-6).

The Legislature of this State has defined common and contract carriers in the following language: "* * * (e) the term 'common carrier by motor vehicle' means any person who undertakes, whether directly or by lease or any other arrangement, to transport passengers or property, or any class or classes of property, for the general public over the highways of this State by motor vehicles for hire,

whether over regular or irregular routes, including such motor vehicle operations of carriers by rail, water or air and of express or forwarding agencies, and *leased or rented motor vehicles, with or without drivers;* [Emphasis supplied] (f) the term 'contract carrier by motor vehicle' means any person not included under paragraph (e) of this section, who under special and individual contracts or agreements, and whether directly or by lease or any other arrangement, transports passengers or property over the highways in this state by motor vehicle for hire; * * *". Motor carriers are defined as follows: "* * * (g) the term 'motor carrier' includes both a common carrier by motor vehicles and a contract carrier by motor vehicle; * * *". Chapter 134, Article 1, Section 2, Acts of the Legislature, 1947, Regular Session. (Michie's Code, 1949, 24A-2-2).

A common carrier is required to obtain a certificate of convenience and necessity from the public service commission. Chapter 126, Article 2, Section 5, Acts of the Legislature, 1945, Regular Session. (Michie's Code, 1949, 24A-2-5.)

A contract carrier must likewise obtain a permit under the provisions of Chapter 126 *id.,* Article 3, Section 3. (Michie's Code, 1949, 24A-3-1 *et seq.)*

A common carrier by motor vehicle is declared by statute to be effected with a public interest and subject to regulations similar to regulations of public utilities. Chapter 50, Article 2, Section 1, Acts of the Legislature, 1937, Regular Session, (Michie's Code, 1949, 24A-2-1.)

A contract carrier is likewise declared to be effected with a public interest and is subject to regulation. Chapter 50 *id.,* Article 3, Section 1, *et seq.* (Michie's Code, 1949, 24A-3-1 *et seq.)*

The foregoing statutes quoted and adverted to concern the same subject matter and must be read and considered in *pari materia. State* v. *Hoult,* 113 W. Va. 587, 169 S. E. 241; *State* v. *Reed,* 107 W. Va. 563, 149 S. E. 669; *Hays* v.

*Harris,* 73 W. Va. 17, 80 S. E. 827. See *State* v. *Epperly,* 135 W. Va. 877, 65 S. E. 2d 488; *Algoma Coal & Coke Co.* v. *Alexander,* 136 W. Va. 521, 66 S. E. 2d 201.

Reading, considering and giving full effect to the foregoing statutes, the ultimate effect is to place the holder of a U license in the category of a common or contract carrier, though such holder is not in fact, a common or contract carrier, and under the lease cannot engage in the transportation of persons or property for hire.

If we follow literally the various statutes above noted, the conclusion is inescapable that so far as administrative action is concerned, a person who rents or leases a motor vehicle without a driver, regardless of its use, must be placed in the category of either a common or contract carrier, though no carriage of property or persons for the general public is contemplated, and is in fact, forbidden by the lease agreement. Likewise, no carriage of persons or property for hire under a special contract is contemplated, and is likewise forbidden by the lease agreement.

The question presented here is one of first impression in this jurisdiction, although it has frequently been the subject of judicial inquiry in other states. The difference in statutory provisions of other states from similar statutes in this state may be a ground for divergence of opinion. In practically all the other cases, the general trend of judicial expression is that a carrier devoted to private use cannot be made a common or contract carrier by a legislative fiat. In some instances, the act attempting to make such vehicles common or contract carriers was struck down on the ground that the title was insufficient. See *People* v. *Hertz Driveurself Stations* (Mich.) 61 N. W. 2d 113.

In *Lloyd A. Fry Roofing Co.* v. *Michigan Public Serv. Com'n.* (Mich.) 61 N. W. 2d 783, the plaintiff sought to restrain the public service commission from interfering with their right to haul merchandise in leased motor vehicle equipment. The commissioner had classified the

owner of the motor vehicle as a contract motor carrier of property. It was held there that neither the lessor, lessee nor its drivers were carriers of passengers or property for hire over the highway. To the same effect see *Armstrong* v. *Denver Saunders System Co.* (Colo.) 268 P. 976.

The first headnote in *State* v. *Dabney* (Ark.) 5 S. W. 2d 304, reads as follows: "One renting or hiring to individuals who applied therefor automobiles to be operated by hirer at his own risk and discretion was neither a private nor public carrier of passengers, and was not engaged in business of using motor vehicles for transportation of passengers for hire within meaning of [designated statute], requiring payment of tax in addition to registration fees." "Leasing automobile to be used only by lessee does not make lessor a public or private common carrier of passengers for hire, so as to require permit under Rem. Comp. Stat. §§6382, 6384, 6385." *State* v. *Bee Hive Auto Service Co. Inc., et al.* (Wash.) 242 P. 384. Application of a similar principle was made in the case of *Cobb* v. *Harrington* (Texas) 190 S. W. 2d 709. For further elaboration of this principle see *Dymond Cab Co.* v. *Branson* (Okla.) 131 P. 2d 1007; *Lawrence* v. *Goddard* (Fla.) 168 So. 13.

A person who buys and sells property or rents trucks to others is not a highway carrier. *People* v. *Tedesco* (Cal. App.) 64 P. 2d 966.

A truck leased to other persons, the sole control being exercised by the lessee, is not a common carrier. *People* v. *Heckman Trucking Co.* (N. Y.) 14 N. E. 2d 801.

The opinion in the case of *Hertz Drivurself Stations* v. *Siggins,* (Pa.) 58 A. 2d 464, contains an extended and instructive discussion of the questions presented in this proceeding. The *Siggins* case is in accord with the other cases cited. It suffices to say that all of the cases we have examined show a uniform trend of judicial decision, though considering statutes differently worded from those considered in this case.

We have found one exception to the general trend of authority in the case of *Louisville Taxicab & Transfer Co.* v. *Blanton,* (Ky.) 202 S. W. 2d 433. In the *Blanton* case, the court rested its decision on the wording of the statute in force in Kentucky.

In the case of *Hodge Drive-it-Yourself Co.* v. *City of Cincinnati et al.,* 284 U. S. 335, 52 S. Ct. 144, 70 L. Ed 323, the court had before it a municipal ordinance requiring persons engaged in the business of letting out automobiles to be driven by and used by those who hired them, to pay license fees on the motor vehicle and deposit an insurance policy or bond for the protection of persons and property against negligent operation of the vehicle. But that ordinance was sustained on the ground that the state had power to regulate public highways and that the ordinance was not burdensome, arbitrary or capricious in its classification. Obviously a different question was presented in the *Hodge* case from that presented in the instant case.

It is said in the case of *Michigan Public Utilities Commission* v. *Duke,* 266 U. S. 570, 45 S. Ct. 191, 67 L.Ed. 445, "* * * it is beyond the power of the state by legislative fiat to convert property used exclusively in the business of a private carrier into a public utility, or to make the owner a public carrier, for that would be taking private property for public use without just compensation, which no state can do consistently with the due process of law clause of the Fourteenth Amendment. *Producers Transportation Co.* v. *Railroad Commission,* 251 U. S. 228, 230, 40 S. Ct. 131, 64 L.Ed. 239; *Wolff Co.* v. *Industrial Commission,* 262 U. S. 522, 535, 42 S. Ct. 630, 67 L.Ed. 1103, 27 A.L.R. 1280. On the facts above referred to, it is clear that, if enforced against him, the act would deprive plaintiff of his property in violation of that clause of the Constitution."

In passing, it may be noted that there is a similarity of the Michigan statutes and the pertinent statutes here considered. As hereinabove stated, we think this is an

effort by the legislature by an enactment of a series of statutes to classify relators as either common or contract carriers, thus making their business subject to regulation. This cannot be done by legislative fiat. "Private property shall not be taken or damaged for public use without just compensation * * *". Article III, Section 9, Constitution of West Virginia.

It was held in the case of *Frost* v. *Railroad Commission of State of California,* 271 U. S. 583, 46 S. Ct. 605, 70 L. Ed. 1101, that a state has no right to compel the surrender of a constitutional right as a condition for granting a privilege. The privilege of using state highways may not be withheld because of an unconstitutional condition imposed by the state. It is likewise held in the *Frost* case that a "* * * private carrier cannot be converted against his will into a common carrier by mere legislative command."

It cannot be gainsaid that a state under the police power has the right to regulate the use of its highways when such regulation is founded upon a rational or reasonable basis.

It is not reasonable in this instance where the owner of an automobile used for private carriage of passengers is granted an A license, but the owner of a motor vehicle who leases his vehicle for a long term for private use is required to submit to regulation as a common or contract carrier. We do not think that such discrimination can be justified on any reasonable or sensible basis, and those who would maintain it, disregard the basis necessary for the regulation of motor carriers.

We reiterate that consideration of a single statute adverted to herein does not show the complete situation with respect to the relator's business, but reading them together and applying and enforcing them, results in making the relators either common or contract carriers, subject to regulation by the Public Service Commission of this state.

We do not think the statutes in their broad scope, and

when applied to a proper case are unconstitutional, but as applied to the relators in this case, the application of such statutes imposes an unconstitutional burden upon the relators and their property. *Carter* v. *City of Bluefield*, 132 W. Va. 881, 54 S. E. 2d 747. See *Fruth* v. *Board of Affairs*, 75 W. Va. 406, 84 S. E. 105; *State* v. *City of Charleston*, 91 W. Va. 318, 112 S. E. 577.

In consideration of the foregoing, we are of opinion that the relators are entitled to the writ of mandamus prayed for herein, and that the Commissioner be, and is hereby required, to issue the relators a Class A license for the motor vehicle in question, to be used by the lessors and lessee solely in the private business of the Bank.

*Writ awarded.*

HAYMOND, JUDGE, dissenting:

Though I concur in the view of the majority that the petitioners are not a common carrier and may not be made a common carrier, contrary to fact, by mere legislative fiat, I dissent from the holding of the majority that, as owners of a passenger motor vehicle leased to another person for compensation for the private use of the lessee, they are entitled to a Class A registration card and license plate for such vehicle and that the issuance of such registration card and license plate may be compelled by a writ of mandamus in this original proceeding.

The portion of Section 2, Article 1, Chapter 134, Acts of the Legislature, 1947, Regular Session, which defines the phrase "common carrier by motor vehicle" and includes within the definition of such common carrier motor vehicles leased or rented with or without drivers, should be considered as applicable only to the use by the lessee of leased or rented motor vehicles to transport passengers or property for the general public over the highways of this State for hire. If so considered, as I think it should be, that statutory provision would not apply to the motor vehicle involved in this proceeding which has been leased by its owners, the petitioners, for

compensation, without a driver, to the lessee for the private use of the lessee in connection with its business but not for the transportation for hire of passengers or property.

If, however, the foregoing statutory provision should be regarded as intended to apply to a motor vehicle leased by its owners for compensation to a lessee for the purely private use of the lessee and to convert the lessors of such vehicle engaged in such use into a common carrier, contrary to the actual factual situation, the provision would be invalid and of no force or effect, as the majority properly holds. It is well settled that a factual reality can not be changed or overcome by mere legislative fiat and that a legislative declaration which is clearly contrary to the actual facts in a particular situation will not be recognized or sanctioned in a judicial proceeding. *State ex rel. Cashman v· Sims,* 130 W. Va. 430, 43 S. E. 2d 805, 172 A. L. R. 1389; *State ex rel. Adkins* v. *Sims,* 127 W. Va. 786, 34 S. E. 2d 585, (concurring opinion); *Woodall* v. *Darst,* 71 W. Va. 350, 77 S. E. 264, 80 S. E. 367, 44 L. R. A. N. S., 83, Ann. Cas. 1914B, 1278. The concurring opinion in *State ex rel. Adkins* v. *Sims,* 127 W. Va. 786, 34 S. E. 2d 585, contains this language: "The Legislature may not declare that a public purpose which is clearly a private one. It cannot, by mere fiat, make black white. *Ohio Oil Co.* v. *Wright,* 386 Ill. 206, 53 N. E. 2d 966." In the *Ohio Oil Company* case the Supreme Court of Illinois said: "The legislature does not have the power by legislation to declare that not to be a fact which everyone knows is a fact, *(Winter* v. *Barrett,* 352 Ill. 441) and, by the same reasoning, cannot legislate that to be a fact which everyone knows is not a fact." The Legislature can not stop the rain by merely declaring that there is none. "A statute creating a presumption that is arbitrary or that operates to deny a fair opportunity to repel it violates the due process clause of the Fourteenth Amendment. Legislative fiat may not take the place of fact in the judicial determination of issues involving life, liberty or property." *Western and Atlantic Railroad Company* v.

*Henderson,* 279 U. S. 639, 49 S. Ct. 445, 73 L. Ed. 884; *Manley* v. *State of Georgia,* 279 U. S. 1, 49 S. Ct. 215, 73 L. Ed. 575.

The rule is firmly established that a statute susceptible of two constructions, one of which is, and the other of which is not, violative of a constitutional provision, will be given that construction which sustains its constitutionality unless it is plain that the other construction is required. *Bennett* v. *Bennett,* 135 W. Va. 3, 62 S. E. 2d 273; *State of West Virginia by C. S. Davis* v. *C. H. Musselman Company,* 134 W. Va. 209, 59 S. E. 2d 472; *State ex rel. Sims* v. *The County Court of Kanawha County,* 134 W. Va. 867, 61 S. E. 2d 849; *Darnall Trucking Company* v. *Simpson,* 122 W. Va. 656, 12 S. E. 2d 516, appeal dismissed, 313 U. S. 549, 61 S. Ct. 1121, 85 L. Ed. 1514; *State* v. *Siers,* 103 W. Va. 34, 136 S. E. 504; *State* v. *Furr,* 101 W. Va. 178, 132 S. E. 504; *Eureka Pipe Line Company* v. *Hallanan,* 87 W. Va. 396, 105 S. E. 506; *Coal and Coke Railway Company* v. *Conley and Avis,* 67 W. Va. 129, 67 S. E. 613; *Ex Parte Caldwell,* 61 W. Va. 49, 55 S. E. 910, 10 L. R. A., N. S., 172; *Webb v· Ritter,* 60 W. Va. 193, 54 S. E. 484; *Underwood Typewriter Company* v. *Piggott,* 60 W. Va. 532, 55 S. E. 664; *Charleston and Southside Bridge Company* v. *Kanawha County Court,* 41 W. Va. 658, 24 S. E. 1002; *State* v. *Workman,* 35 W. Va. 367, 14 S. E. 9, 14 A. L. R. 600; *Hartley* v. *Henretta,* 35 W. Va. 222, 13 S. E. 375; *State* v. *Richards,* 32 W. Va. 348, 9 S. E. 245, 3 L. R. A. 705; *Slack* v. *Jacob,* 8 W. Va. 612; *Osburn* v. *Staley,* 5 W. Va. 85, 13 Am. Rep. 640; *Carpel of Richmond* v. *City of Richmond,* 162 Va. 833, 175 S. E. 316; *Bourne* v. *Board of Supervisors of Henrico County,* 161 Va. 678, 172 S. E. 245; *Anniston Manufacturing Company* v. *Davis,* 301 U. S. 337, 57 S. Ct. 816, 81 L. Ed. 1143; *County Court of Wayne County* v. *Louisa and Fort Gay Bridge Company,* 46 F. Supp. 1; 17 Michie's Jurisprudence, Statutes, Section 30; 11 Am. Jur., Constitutional Law, Section 97. Under this rule of statutory construction the provisions of Section 2, Article 1, Chapter 134, Acts of the Legislature, 1947, Regular Session, should be construed to apply only to motor vehicles leased or rented for the transportation for the general

public over the highways of this State of passengers or property for hire and not to apply to motor vehicles leased or rented for the purely private use of the lessee in the transportation of passengers or property. A construction which would apply those statutory provisions to the vehicle leased by the petitioners and would undertake to make them a common carrier, contrary to the fact, would render that part of the statute unconstitutional as violative of the due process of law clause of the Fourteenth Amendment to the Constitution of the United States and Article III, Section 10, of the Constitution of West Virginia. *Smith* v. *Cahoon*, 283 U. S. 553, 51 S. Ct. 582, 75 L. Ed. 1264; *Western and Atlantic Railroad Company* v. *Henderson*, 279 U. S. 639, 49 S. Ct. 445, 73 L. Ed. 884; *Manley* v. *State of Georgia*, 279 U. S. 1, 49 S. Ct. 215, 73 L. Ed. 575; *Frost* v. *Railroad Commission of State of California*, 271 U. S. 583, 46 S. Ct. 605, 70 L. Ed. 1101, 47 A. L. R. 457; *Michigan Public Utilities Commission* v. *Duke*, 266 U. S. 570, 45 S. Ct. 191, 69 L. Ed. 445, 36 A. L. R. 1105. In *Buckland* v. *Lee*, 6 F. Supp. 606, decided October 16, 1931, the District Court of the United States for the Southern District of West Virginia, consisting of three judges, held that Section 1, Article 6, Chapter 17, Code, 1931, requiring a certificate of convenience and necessity for the operation of motor vehicles in the transportation of passengers or property for compensation did not apply to motor vehicles used as private carriers.

The holding of the majority that the petitioners, as owners of the motor vehicle leased by them to the Union National Bank of Clarksburg for compensation for private use by the lessee in its business, are entitled to a Class A registration card and license plate is expressly contrary to and is in direct conflict with two specific provisions of Section 1, Article 10, Chapter 17A, of Chapter 129, Acts of the Legislature, 1951, Regular Session. That section in part provides:

"Vehicles subject to registration under the provisions of this chapter shall be placed in the following classes for the purpose of registration:

"Class A. Motor vehicles of passenger type, *other than those leased or operated for compensation;*" and * * *

"Class U. Passenger motor vehicles rented for compensation without a driver." (Emphasis supplied). By the express words of the section "other than those leased or operated for compensation;" the passenger type vehicle leased by the petitioners to the bank is expressly excluded from the Class A category dealt with in the section, and, being rented for compensation without a driver, is specifically brought within the provision "Passenger motor vehicles rented for compensation without a driver." and is placed in the Class U category of the section. Plainer or more positive language than that contained in the two quoted statutory provisions is not readily conceivable and that language should be judicially recognized and applied. Unless words have entirely lost their meaning the plain and express provision relating to motor vehicles placed by Section 1 in Class A prohibits the issuance of a Class A registration card and license plate, and the plain and express provision relating to motor vehicles placed by the same section in Class U requires the issuance of a Class U registration card and license plate, for the vehicle leased by the petitioners for compensation to the bank without a driver. Under the two foregoing statutory provisions the solution of those questions is just that plain and just that simple.

Though the statute requires a Class U registration and license plate for the leased motor vehicle here involved, when used by the lessee in its private business, the lessors are not, and may not by mere legislative fiat be made, a common carrier; and for that reason the owners of such motor vehicle are not subject to the provisions of Section 2, Article 1, Chapter 134, Acts of the Legislature, 1947, Regular Session, Section 5, Article 2, Chapter 126, Acts of the Legislature, 1945, Regular Session, Section 6, Article 6, Chapter 108, Acts of the Legislature, 1949, Regular Session, or any other statutory provisions which relate to a common carrier.

As the relief sought by the petitioners is the issuance

to them by the defendant of a registration card and a license plate of a type to which they are clearly not entitled, I would refuse the writ for which they pray in this original proceeding.

I am authorized to state that Judge Given concurs in the views expressed in this dissent.