213 So.2d 570

**NATIONAL MOTOR FLEETS, INC.**

v.

**Bradley BROWN, Director, Dept. of Revenue, Jefferson County.**

**6 Div. 552.**

Supreme Court of Alabama.

July 25, 1968.

Rehearing Denied Aug. 22, 1968.

Deramus & Johnston, Birmingham, for appellant.

MacDonald Gallion, Atty. Gen., Willard W. Livingston and Wm. H. Burton, Asst. Attys. Gen., for appellee.

COLEMAN, Justice.

Appellant, owner and lessor of a motor vehicle, appeals from a judgment denying appellant's application for mandamus to require the licensing authority to sell to appellant a vehicle license for $250.00 instead of $500.00. Appellant will sometimes be referred to as taxpayer.

Taxpayer is the owner of a truck tractor having a gross vehicle weight of 72,000 pounds. Taxpayer has leased the vehicle to a lessee who operates the truck tractor exclusively to carry lessee's own products. Lessee has not hauled the property of others in the leased vehicle. Lessee furnishes its own driver and has exclusive control over the driver and the use of the truck tractor. Lessee does not haul anything for compensation or for hire. The facts are substantially identical with the facts in Brown v. National Motor Fleets, Inc., 276 Ala. 493, 164 So.2d 489. There has been a change, however, in the licensing statute.

The license tax is levied by the state on trucks and truck tractors, used on the public highways of this state, under § 697, Title 51, Code 1940, as amended by Act No. 580, 1967 Acts, Vol. II, page 1343.[1]

1. As pertinent, Act No. 580 recites:

### "AN ACT

"To amend further Title 51, Sections 692, 697 and 703, Code of Alabama 1940, so as to make further provisions respecting licenses and registration fees on motor vehicles and trailers.

"Be It Enacted by the Legislature of Alabama:

"........................

"Section 2. Title 51, Section 697, Code of Alabama 1940, as amended, shall be and hereby is further amended so that the said Section 697 shall read as follows:

"Section 697. (a) For each truck or truck tractor other than those subject to licenses under subsection (b) of this Section, using the public highways of this State, the following license based on the gross vehicle weight in pounds shall pay the following licenses:

"For each truck or truck tractor plus the heaviest load to be carried having the following gross vehicle weight in pounds:

| "Weight of Pounds: | Amount of License Tax |
|---|---|
| 0 to 8000 | $ 13.00 |
| 8001 to 12000 | 30.00 |
| 12001 to 18000 | 45.00 |
| 18001 to 30000 | 75.00 |
| 30001 to 42000 | 100.00 |
| 42001 to 52000 | 150.00 |
| 52001 to 62000 | 200.00 |
| 62001 over | 250.00 |

"Provided, that the rates hereinabove specified shall be limited with respect to trucks owned and used by a farmer for transporting farm products or the personal property of the farmer for his use on his farm, and with respect to trucks owned and used by any person for transporting of forest products from the point of severance to a sawmill, to a paper mill or to a concentration yard, and with respect to trucks owned and used by any person for the transporting of coal from the point where it is mined or stored to any other point, to a maximum of $30.00 where the gross vehicle weight of the truck does not exceed 30,000 pounds, and to a maximum of $50.00 where the gross vehicle weight of the truck exceeds 30,000 pounds but does not exceed 42,000 pounds.

"(b) For each truck or truck-tractor with more than two axles when a single unit and each truck or truck-tractor used in combination with a trailer

As amended, § 697 divides trucks and truck tractors into two classes.

By the terms of subsection (a), a tax is levied on all trucks and truck tractors which are not taxed under subsection (b). In subsection (b), a tax is levied on trucks and truck tractors "used . . . . to transport goods . . . . of any kind . . . . for compensation of any kind, or operated under any rental, lease or other agreement where compensation is charged for the use of such vehicle . . . . ," with certain specified exceptions. The vehicles taxed are thus divided into two general classes. Under subsection (a) are taxed vehicles not operated for compensation or under a lease agreement where compensation is charged for use of the vehicle. Under subsection (b) are taxed vehicles which are operated for compensation or under a lease agreement where compensation is charged for use of the vehicle. In both subsections, the price of the license is graduated according to the weight of the vehicle. The price is higher for most vehicles under subsection (b). As we understand the case, taxpayer contends that, for the 72,000-pound truck tractor here involved, it is due to pay only $250.00 under subsection (a) and not $500.00 under subsection (b). Taxpayer argues three propositions to support its contention.

### 1.

■ Appellant contends that § 697(b), as amended, does not apply to appellant's vehicle.

§ 697(b), as amended by Act No. 580, recites in pertinent part:

"(b) For each truck or truck-tractor . . . . which are (sic) used on public highways of this State to transport goods . . . . for compensation of any kind, or *operated under any rental, lease or other agreement where compensation is charged for the use of such vehicle, . . . .* shall pay the following licenses:" (Emphasis Supplied); which language is followed by the table setting out on a graduated scale the weights of vehicle and the tax due, respectively, for the various weights.

or semi trailer which are used on public highways of this State to transport goods, wares, merchandise, or commodities of any kind or nature for compensation of any kind, or operated under any rental, lease or other agreement where compensation is charged for the use of such vehicle, except trucks used for the transportation of household goods, personal furniture, or other household effects, and motor vehicles used for the transportation of coal, iron, ore, limestone, bauxite, sand and gravel, and except motor vehicles used in the transportation of commodities exempt under the Alabama Motor Carrier Act of 1939, as amended, either directly or indirectly, shall pay the following licenses:

| "For each truck or truck tractor plus the heaviest load to be carried having the following gross vehicle weight—in pounds: | Amount of License tax: |
|---|---|
| 0 to 6000 | $ 13.00 |
| 6001 to 12000 | 35.00 |
| 12001 to 18000 | 60.00 |
| 18001 to 24000 | 75.00 |
| 24001 to 30000 | 200.00 |
| 30001 to 36000 | 300.00 |
| 36001 to 42000 | 400.00 |
| 42000 over | 500.00 |

"Provided, that for each tractor which is operated by a for-hire motor carrier and which is operated exclusively within 15 miles of the corporate limits of the incorporated municipality in which it is customarily domiciled (but not including vehicles operating beyond the borders of Alabama) an annual license tax and registration fee of $100 is hereby imposed and shall be charged."

Appellant's vehicle is used on the public highways of this state to transport goods and is operated under a lease agreement where compensation is charged for use of the vehicle. We think the quoted language of § 697(b) plainly imposes a license tax on appellant's vehicle.

Appellant appears to argue in brief that we held in Brown v. National Motor Fleets, Inc., 276 Ala. 493, 164 So.2d 489, that the same or similar language did not apply to trucks leased pursuant to a bona fide lease, citing the opinion on second rehearing.

We do not agree. On first rehearing, we said:

"The term 'operate for hire' has a well-known and definite meaning in the jurisprudence of this country. The term means in law, in commercial usage, and in ordinary parlance, the transportation of persons or property for compensation and could not possibly apply to a lessor, such as the appellee, which leases the vehicles to a lessee to carry his own goods or products. (Citations Omitted)

"The fact that Section (b) in the body of the Act purports to enlarge the definition of 'for hire' is inefficacious to render the appellee liable for the license since the enlarged definition is directly conflictory with the Title of the Act which gives no notice of this broad definition and, as to this appellee, the enlargement of the definition contains more than one subject and would be unconstitutional under Section 45.

". . . . . . . . . .

"We are at the conclusion that the Act is broader than the Title and, therefore, that part which is within both the Title and the body of the Act will stand, while that part not indicated by the Title will fall. (Citations Omitted)" (276 Ala. at pages 494 and 495, 164 So.2d at page 490)

The holding was that, although the language in the *body* of Act No. 672 (considered in 276 Ala. 493, 164 So.2d 489, supra), included leased vehicles, the *title* of Act No. 672 did not include leased vehicles, and, therefore Act No. 672 violated the requirement of Section 45 of the Constitution that the subject of the act "shall be clearly expressed in its title."

■ Appellant argues that, because appellee mailed to appellant, and others, certain forms or notices indicating that appellant's vehicle would be taxed under § 697(a) instead of § 697(b), it is not clearly apparent that, or is at least doubtful whether, the language of Act No. 580 shows a legislative intent to tax appellant's vehicle under amended § 697(b). We will not undertake to explain or understand why such notices were mailed, but we think it is beyond dispute that the language of the statute, and not the notices, must determine the law which controls this decision.

We are of opinion that § 697(b), as amended, does apply to a leased vehicle which is used to haul exclusively the property of lessee, including appellant's vehicle, and that appellant's first contention is not sustained.

2.

■ Appellant's second contention is that if § 697(b) be construed to apply to a leased vehicle used to haul exclusively the property of lessee, than § 697(b) conflicts with § 1 and § 35 of the Constitution of 1901, and, therefore, is invalid. Appellant contends that classifying such a leased vehicle with vehicles operated for hire, and classifying vehicles operated to haul exclusively the goods of the vehicle owner at a lower tax rate under § 697(a), constitute an arbitrary and unreasonable classification which offends constitutional requirements governing classification for taxation.

This court has said:

"It has been repeatedly held that 'In levying a privilege or license tax as to trades, businesses or occupations, the legislature may not discriminate between members of the same class, and the tax must not be so exorbitant as to prohibit or unreasonably restrain or oppress legitimate and useful trades, businesses or occupations, that are not productive of disorder or injurious to the public. In applying the tax the classification or reclassification cannot be arbitrary, fanciful or capricious, but must have a substantial basis as distinguished from a mere fictitious or fanciful basis. Aside from these restrictions, the legislative power is unrestrained. (Citations Omitted)'

"'Tests for the determination of the operation or administration of a law or ordinance as to a classification contained therein within the Constitutions, state and federal, are that the class (1) must be germane to the purpose of the law; (2) must bring within its influence all who are under the same conditions and apply equally to each person or member of the class, or each person or member who may become one of such class; (3) must not be so restricted and made to rest upon existing circumstances only as not to include proper additions to the number included within the class; (4) must be based on substantial distinctions which make one class different from another; and (5) must be reasonable under the facts of the case, and not oppressive and prohibitive. (Citations Omitted) This is necessary to secure uniformity in the operation, administration, and proper distribution of the burden of government. Ex parte Smith, 212 Ala. 262, 102 So. 122; Republic I. & S. Co. v. State, 204 Ala. 469, 86 So. 65.' Woco Pep Co. of Montgomery v. City of Montgomery, 213 Ala. 452, 105 So. 214, 218.

"Statutory discrimination between classes must be presumed to be relevant to a permissible legislative purpose and will not be deemed to be a denial of equal protection if any state of facts could be conceived which would support it. (Citations Omitted)

"As pointed out in Carmichael v. Southern Coal & Coke Co., 301 U.S. 495, 57 S.Ct. 868, 872, 81 L.Ed. 1245, 'A state legislature, in the enactment of laws, has the widest possible latitude within the limits of the Constitution. In the nature of the case it cannot record a complete catalogue of the considerations which move its members to enact laws. In the absence of such a record courts cannot assume that its action is capricious, or that, with its informed acquaintance with local conditions to which the legislation is to be applied, it was not aware of facts which afford reasonable basis for its action. Only by faithful adherence to this guiding principle of judicial review of legislation is it possible to preserve to the legislative branch its rightful independence and its ability to function.'" State v. Pure Oil Co., 256 Ala. 534, 538, 539, 55 So.2d 843, 846.

The question presented is whether the legislature, in conformity with constitutional requirements for equal protection and against arbitrary discrimination, can classify appellant's vehicle with vehicles operated for hire for the purpose of imposing a license tax.

To support its contention that the classification is discriminatory, appellant cites the three cases next mentioned. In Hertz Drivurself Stations, Inc. v. Siggins, 359 Pa. 25, 58 A.2d 464, 7 A.L.R.2d 438, the court held that a statute, which required lessors of motor vehicles without drivers to obtain a certificate of convenience and necessity, constituted ". . . . unwarranted infringements of the appellant's freedom to use and enjoy its property, as it sees fit . . . ." and violated the Pennsylvania

constitution; but, we do not understand that the question of the power of the legislature to classify driverless vehicles for taxation was involved in the case.

In Hertz Corp. v. Heltzel, 217 Or. 205, 341 P.2d 1063, the court held violative of the constitutions of Oregon and the United States a statute which required that a lessor of trucks obtain a permit. The Oregon statute was similar to the Pennsylvania statute in *Siggins*. The Oregon court followed the Pennsylvania court.

In People v. Cassese, 43 Misc.2d 869, 251 N.Y.S.2d 540, the court held invalid an ordinance which required a private rental vehicle to be equipped with taximeter, dome-light, medallion, and other equipment.

As we understand them, none of the cases cited by appellant turns on the question of classification for taxation. In fact, we are cited to only a few cases which consider the question.

Almost on all fours with the instant case is Louisville Taxicab & Transfer Co. v. Blanton, 305 Ky. 179, 202 S.W.2d 433, 175 A.L.R. 1329, where the court held that lessors of trucks were liable for excise taxes as statutory "contract carriers" and were subject to the regulation provided by the statute. The Kentucky court recognized that the legislature could not, by fiat, convert into an operator for hire, one who, in reality, was not. The court said, however:

"But here the Legislature did not arbitrarily make the Companies 'operators for hire' or 'contract carriers.' The Companies not only lease the cars and trucks, but keep them in repair, pay all licenses and excise taxes, and supply the oil and gasoline to operate them—in short, they furnish everything but the drivers and the loads to be hauled. Furthermore, the Companies lease on a mileage basis their equipment to be used for the purpose of transporting people and goods on the public highways.

"In the light of these facts it cannot be said that the Legislature by fiat made the Companies operators for hire of motor vehicles used in the transportation of persons or property, nor did the Legislature act arbitrarily in converting operators for hire into contract carriers under subsection 4 of KRS 281.010, since the companies enter into individual contracts with the lessees. State highways are public property which are primarily used for private purposes. When they are used for the purpose of profit, the use is deemed extraordinary which the Legislature may prohibit or condition as it sees fit. (Citations Omitted).

" . . . . . . .

"We cannot agree with the Companies that KRS Chapter 281 discriminates against them or takes their property in contravention of the 14th Amendment of the Federal Constitution. As we see it, the statute treats all contract carriers alike and it cannot be argued with reason that the collection of the weight tax provided in KRS 281.480, which in reality is an excise tax to be applied on the expense of constructing and maintaining the public highways of the State, is a taking of the Companies' property without due process. The Companies argue that due to the manner in which they conduct their business the statute works a special or peculiar hardship upon them. The answer to that is that the statute makes no requirements of them which are not imposed upon all other contract carriers, and those Companies must make their method of doing business comply with the statute, rather than to insist that the Legislature enact a statute to comply with their method of doing business." (175 A.L.R. at pages 1331 and 1332, 202 S.W.2d at 435)

The Supreme Court of the United States, in 1932, held constitutional a Texas statute which required contract carriers to obtain a permit for operation on Texas highways. While the case is not directly in point, two

statements in the opinion seem appropriate here, to wit:

"First. It is well established law that the highways of the state are public property; that their primary and preferred use is for private purposes; and that their use for purposes of gain is special and extraordinary, which, generally at least, the legislature may prohibit or condition as it sees fit. (Citations Omitted)

" . . . . . .

" . . . . It may be said with like force that it belongs to the state, 'as master in its own house,' to prescribe the terms upon which persons will be permitted to contract in respect of the use of the public highways for purposes of gain. (Citation Omitted)" Stephenson v. Binford, 287 U.S. 251, 53 S.Ct. 181, 189, 77 L.Ed. 288, 87 A.L.R. 721, 727, 734.

In upholding a city ordinance against the claim that it was repugnant to the due process and equal protection clauses of the Fourteenth Amendment in requiring lessors of driverless vehicles to pay license fees and to provide insurance costing ten per cent of gross earnings, the Supreme Court of the United States said:

"Unquestionably, appellants contemplate that those hiring their cars will operate them upon the streets. In fact such use of the streets is essential to appellants' business. It is a special and extraordinary use materially differing from operation of automobiles or trucks by owners or their chauffeurs in the usual way for private ends. . . . ." Hodge Drive-It-Yourself Co. v. City of Cincinnati, 284 U.S. 335, 337, 52 S.Ct. 144, 76 L.Ed. 323.

The vehicle of appellant uses the public highways to make a profit for the vehicle owner by transporting the property of others. In this respect the vehicle differs from a vehicle used to transport property of the vehicle owner. We are of opinion that it is reasonable and permissible to classify appellant's vehicle with other vehicles which use the public highways to make a profit for the vehicle owner by transporting the property of others. § 697, as amended, does this. We hold the statute valid and constitutional against the objection urged by appellant.

3.

■ Appellant's third contention is that, if amended § 697(b) be construed to apply to a leased vehicle used by the lessee to haul exclusively his own goods, then Act No. 580, or § 697(b) as amended by that act and Act No. 223, violates the requirement of Section 45 of the Constitution that "Each law shall contain but one subject."

Going back to Brown v. National Motor Fleets, Inc., supra, we note that the title of Act No. 672, there construed, recites as follows:

" 'To revise the privilege license schedules relating to the registration of trucks, truck-tractors, trailers, and semitrailers operated for hire, repealing conflicting laws." (276 Ala. at 495, 164 So.2d at 491)

The title of Act No. 672 expressed the subject as being a revision of license schedules for trucks, etc., but limited the subject to those vehicles "operated for hire." We think, however, that the revision of license schedules for all trucks, etc., is one subject and not two subjects. In Brown, supra, the fault of Act No. 672 was not the inclusion in the act of two matters which did not constitute parts of one subject. The fault was that the body was "broader than the Title" and included matter of which the title gave no notice. That situation does not exist here.

Act No. 672, construed in Brown, supra, appears in 1961 Acts, at page 921. It became effective October 1, 1961. By its terms, earlier provisions of § 697, Title 51, which conflicted with Act No. 672 were repealed.

Act No. 223, 1967 Acts, Vol. I, page 282, was approved May 10, 1967. Its title recites:

"To make further provisions respecting licenses and registration fees on motor vehicles and trailers, including provisions respecting the disposition of the proceeds of the said licenses and fees, provisions respecting remittances by the judges of probate of the said proceeds, and provisions as to the amount of the said licenses and fees on certain motor vehicles; and to those ends, to amend Sections 692, 693, 695, 696, 697, 703, 712, and 713 of Title 51 of the Code of Alabama of 1940 and to repeal Sections 698, 699, and 700 of the said Title 51, and all other statutes in conflict with this act."

The subject expressed in the title of Act No. 223 is "To make further provisions respecting licenses and registration fees on motor vehicles and trailers . . . ." and to amend, among other pertinent Code sections, § 697 of Title 51. The title of Act No. 223 does not limit the subject to vehicles "operated for hire," as did Act No. 672, approved September 8, 1961. The title of Act No. 223 is broad enough to give notice that the subject of the act is to make provision for licensing motor vehicles and trailers operated under a lease agreement where compensation is charged for use of the vehicle, and that the subject is not limited to vehicles "operated for hire." The infirmity in the title of Act No. 672, supra, was cured by giving the required notice in the title of Act No. 223.

§ 697, of Title 51, did not, however, remain as it was amended by Act No. 223, which was approved May 10, 1967. Act No. 580, supra, was approved September 8, 1967, and became effective October 1, 1967. The title of Act No. 580, set out in footnote 1, supra, gives notice that the subject of the act is "To amend further Title 51, Sections . . . . 697 . . . . so as to make further provisions respecting licenses and registration fees on motor vehicles and trailers." The title of Act

No. 580, as already noted, is broad enough to include vehicles operated under a lease agreement. This court has said:

"A statute has but one subject, no matter how many different matters it relates to, if they are all cognate, and but different branches of the same subject. . . . ." Yeilding v. State, 232 Ala. 292, 296, 167 So. 580, 583.

Providing for licensing and registration fees for trucks operated under a lease agreement is merely one branch of providing for licensing and registration fees for all motor vehicles and trailers. Appellant has not shown that Act No. 223 or Act No. 580 violates Section 45 of the Constitution.

The judgment appealed from is agreeable to our holding that § 697 of Title 51, as amended by Act No. 580, supra, is not subject to the objections urged by appellant and is affirmed.

Affirmed.

LIVINGSTON, C. J., and MERRILL and KOHN, JJ., concur.

## ON REHEARING

In brief, appellant asks:

"Is National Motor Fleets *now* a contract carrier and subject to regulation as such?"

We do not think that we have decided that appellant is a contract carrier and subject to regulation as such a carrier because no such question was presented on this appeal. We did decide that appellant should pay the license tax provided by statute as indicated in opinion on original deliverance.

Appellant asks that we consider State ex rel. Schroath v. Condry, 139 W.Va. 827, 83 S.E.2d 470, which was not called to our attention on original consideration of this appeal. In State v. Condry, supra, the court noted that: "The difference in statutory provisions of other states

from similar statutes in this state may be a ground for divergence of opinion." 139 W.Va. at page 836, 83 S.E.2d at page 475. The court said further that it is not reasonable to allow the owner of an automobile used for private carriage of passengers to be granted an A license and to require the owner who leases his vehicle for private use "to submit to *regulation* as a common or contract carrier. We do not think that such discrimination can be justified on any reasonable or sensible basis, and those who would maintain it, disregard the basis necessary for the *regulation* of motor carriers." (Emphasis Supplied) 139 W.Va. at page 839, 83 S.E.2d at page 477.

Without agreeing or disagreeing with the West Virginia court, we say again that, in the instant case, we do not decide whether appellant is subject to regulation as a contract carrier or not. We adhere to our original decision.

Opinion extended.

Application overruled.

LIVINGSTON, C. J., and SIMPSON and KOHN, JJ., concur.