YELLOW TAXICAB CO. v. GAYNOR, Mayor.

(Supreme Court, Appellate Division, First Department. November 21, 1913.)

Appeal from Special Term, New York County.

Actions by the Yellow Taxicab Company, by the New Taxicab & Auto Company, by the Universal Taximeter Cab Company, and by the Mason-Seaman Transportation Company against William J. Gaynor, as Mayor. From orders at Special Term (143 N. Y. Supp. 279), denying motions to continue injunctions pendente lite, plaintiffs in each case appeal. Affirmed.

Argued before INGRAHAM, P. J., and CLARKE, SCOTT, DOWLING, and HOTCHKISS, JJ.

Edward W. Hatch, of New York City, for appellants.
Terence Farley, of New York City, for respondent.

PER CURIAM. Order affirmed, with $10 costs and disbursements in each case on opinion of Seabury, J., at Special Term. 82 Misc. Rep. 94, 143 N. Y. Supp. 279.

INGRAHAM, P. J. I concur in the affirmance of this order, upon the ground that the ordinance in question is a valid regulation of the use of the streets in the city of New York, and within the power conferred upon the board of aldermen by the charter of that city. By section 42 of the city of New York (Laws 1901, c. 466) it is provided that all the powers and duties which on December 31, 1897, were conferred or charged upon the common council, or the mayor, aldermen, and commonalty of the city of New York, or the board of aldermen thereof, or the board of aldermen or common council of the various cities that united in the consolidation, shall be exercised and performed by the board of aldermen of the city of New York. Section 44 provides that no enumeration of powers in this act shall be held to limit the legislative power of the board of aldermen of the city of New York except as in the charter specially provided, and that the board of aldermen of the city of New York shall exercise and perform said powers and duties by proper ordinances, rules, regulations, and by-laws. Section 50 provides that, subject to the Constitution and laws of the state, the board of aldermen shall have power to regulate the use of streets and sidewalks by foot passengers, animals, or vehicles, to regulate the speed at which vehicles shall be driven or ridden and at which vehicles shall be propelled in the streets to prevent encroachments upon and obstructions to the streets, and to authorize and require their removal by the proper officers, and, whenever the word "vehicles" is used, it shall be deemed to include wagons, trucks, carts, cabs, carriages, stages, omnibuses, motors, automobiles, locomobiles, locomotives, bicycles, tricycles, sleighs, or other conveyances for persons or property. By section 51 it is provided that, subject to the Constitution and laws of the state, the board of aldermen of the city of New York shall have power to provide for the licensing and otherwise regulating the business of public hackmen and cabmen, to regulate the rates of fare to be taken by owners or drivers of hackney coaches, carriages, motors, automobiles, or other vehicles, and to compel the owners thereof to pay annual license fees.

Under this power thus granted, I think the Legislature intended to vest the board of aldermen of the city of New York with entire power to regulate the use of the streets of the city of New York, to regulate the nature of the vehicles that use the streets, and to prescribe the conditions upon which they shall be allowed within the city limits, and with the unrestricted power to regulate the rates of fare to be charged by public conveyances using the streets. If any particular kind of vehicle in use in the city cannot be profitably operated at the rate of fare prescribed in the exercise of this power, the ordinance pre-

scribing the rate of fare to be charged is not, I think, for that reason to be declared unreasonable, or a violation of any provision of the Constitution or laws of the state. No one is bound to provide or operate any particular kind of a vehicle or motor vehicle, and, if the rate of fare fixed by the board of aldermen is not sufficient to allow motor vehicles to be operated in the streets of the city of New York profitably to the owners, then the owners can cease from such operation. Nor does the fact that these motor vehicles had been operating in the streets under a license and at rates of fare that were profitable prevent the board of aldermen, in the exercise of the power vested in it by the Legislature, from reducing the rates of fare. If vehicles were devised of such size and weight, or propelled by power in such a way, as to destroy the streets or prevent the use of the streets by others, it seems to me the board of aldermen would be justified in prohibiting the use of vehicles of that class. The exercise of that power cannot, I think, depend upon what the court might think would be a reasonable regulation. If the Legislature had the power to prohibit the use of any specified class of vehicles in the public streets, it had the power to delegate to the legislative body of the city the right to exercise such power. The Court of Appeals has lately determined that the Legislature has that power. In People v. Rosenheimer, 209 N. Y. 115, 102 N. E. 530, it was held: The Legislature might prohibit altogether the use of motor vehicles upon the highways or streets of the state. But the right to use the highway by any person must be exercised in a mode consistent with the equal rights of others to use the highway, and that the motor vehicle, on account of its size and weight, of its great power, and of the great speed which it is capable of attaining, creates, unless managed by careful and competent operators, a most serious danger, both to other travelers on the highway and to the occupants of the vehicles themselves, is too clearly a matter of common knowledge to justify discussion. The fatalities caused by them are so numerous as to permit the Legislature, if it deemed it wise, to wholly forbid their use. The whole of this argument rests on the proposition that in operating a motor vehicle the operator exercises a privilege which might be denied him, and not a right, and that in a case of a privilege the Legislature may prescribe on what conditions it shall be exercised.

I am willing to place the validity of this ordinance squarely upon the ground that, the Legislature having vested in the legislative department of the city of New York the power to regulate the streets in the city of New York, the use of motors and other vehicles using its streets, the legislative department of the city had the power to prohibit the use of any particular kind of motors or vehicles that the welfare of the city, and its inhabitants, and the public generally in the use of the streets, required. Thus having the power to regulate, it had the power to prohibit, and the lesser power of imposing the terms upon which motors and vehicles should use the streets is included in the greater power to regulate the use of motors and vehicles using the streets. For these reasons, I think the ordinance is not beyond the

power of the board of aldermen of the city of New York, but is a valid exercise of power.

I am therefore in favor of affirming this order.

HOTCHKISS, J., concurs.

SCOTT, J. (dissenting). This is an action in equity to test the validity of an ordinance adopted by the board of aldermen of the city of New York regulating the business of operating public hacks in the city, and, among other things, establishing rates of fare which may be charged by public hackmen. The ordinance is a long and explicit one, and contains a number of provisions which are objected to as unreasonable and incapable of enforcement. As to many of these objections no injunctive relief is necessary, because they relate to matters of minor importance which may easily be separated from the ordinance without impairing its general effect, or, if found to be impracticable, are open to easy amendment.

The point upon which the plaintiff, and the plaintiffs in other similar actions, dwell most strongly is the scale of charges prescribed by the ordinance, which, as the plaintiff contends, is placed so low as to render it impossible to conduct the business in such a manner as the public comfort and safety demands at a reasonable profit, and it is this point alone that I propose to consider.

It is to be remarked at the outset that the injunction pendente lite for which plaintiff prays would by no means be determinative of the issues raised by the pleadings. Its whole office would be to hold matters in statu quo they have been for many years until the question of the reasonableness of the ordinance could be determined upon the trial of the cause which can be had without serious delay.

The only questions which seem to me to be important to be considered on this appeal are, first, whether the plaintiff has any standing to maintain the action, and second, whether upon all the motion papers the plaintiff has made out a case prima facie of unreasonableness. The plaintiff is a corporation organized for the purpose of carrying on the business of a public hackman. It owns several hundred auto motor vehicles which it uses in its business, and the actual investment represented by its capital stock and bonds amounts to several million dollars. It has heretofore carried on its business under licenses issued by the municipal authorities under an ordinance intended to be superseded by the ordinance now sought to be reviewed. It is well settled that an action for an injunction is an appropriate means whereby to test the validity and reasonableness of a municipal ordinance which in its operation will affect a considerable number of people. This is in order to avoid the multiplicity of suits which would be occasioned by resistance to its enforcement, and also because, in general, no adequate remedy at law is available. Birdsall v. Clark, 73 N. Y. 73, 29 Am. Rep. 105; Norris v. Wurster, 23 App. Div. 124, 48 N. Y. Supp. 656. It has been held to be an appropriate remedy to test the validity of ordinances undertaking to reduce the fares on street rail-

ways (City of Cleveland v. Cleveland City R. R. Co., 194 U. S. 517, 24 Sup. Ct. 756, 48 L. Ed. 1102; City of Detroit v. Detroit Citizens' Street Ry. Co., 184 U. S. 368, 22 Sup. Ct. 410, 46 L. Ed. 592), and generally to test the validity of laws and ordinances fixing what are claimed to be unreasonably low rates for services by quasi public corporations (Tampa Waterworks Co. v. Tampa [C. C.] 124 Fed. 932; New Memphis Gas Co. v. Memphis [C. C.] 72 Fed. 952).

It has been generally recognized for many years both in this country and England that a well-regulated system of public hacks and cabs is almost a necessity of urban life, that the persons engaging in such business are employed in performing a quasi public service, and that the business is one within the power of the state to regulate in pursuance of its reserved police power, and it has also been generally agreed that this power of regulation may properly be delegated to each municipality to be enforced by appropriate ordinances. So far as the city of New York is concerned, express authority has been given by the Legislature by section 51 of the charter (Laws 1901, c. 466, as amended by Laws 1910, c. 262) in the following words:

"Subject to the Constitution and laws of the state, the board of aldermen shall have power to provide for the licensing and otherwise regulating the business of * * * hack-men. * * * The board of aldermen shall also have power to regulate the rate of fare to be taken by owners, or drivers of hackney coaches, carriages, motors, automobiles or other vehicles, and to compel the owners thereof to pay annual license fees."

It is axiomatic that, while the power to destroy implies the power to regulate, yet the power to regulate does not involve the power to destroy or prohibit, and, while the Legislature of the state has the power to prohibit altogether the use of motor vehicles in the streets and public highways (People v. Rosenheimer, 209 N. Y. 115, 102 N. E. 530), and perhaps may even delegate such power to a municipality, it is sufficient for the purposes of this appeal to note that it has neither undertaken to exercise the power itself nor to authorize the board of aldermen to do so. The sole power given to the latter body is to regulate, and any ordinance which goes so far as to amount to a practical prohibition would be in excess of the power of the board and consequently void.

The plaintiff also, as I consider, shows such a special interest in the operation and effect of the ordinance, apart from the interest possessed by the members of the community generally, as to entitle it to maintain the action. It has provided itself, at great expense, with the equipment necessary to carry on a perfectly legitimate business of a quasi public character. In so equipping itself I do not consider that it acquired anything in the nature of a vested right to have the rates of fare maintained at the figures at which they stood when the business was entered upon, or to have any particular rates of fare maintained; but it did acquire the right, possessed by every one engaged in a lawful business, to be protected against legislation on the part of the municipal authorities which would destroy its business, or render it impossible to carry it on except at a sure and serious loss which would amount in effect to the destruction of its property without compensa-

tion. I am therefore clearly of the opinion that the plaintiff is entitled to maintain the action.

That the plaintiff has sustained the burden of showing prima facie that the ordinance is unreasonable, so far as concerns the rates prescribed, is, I think, beyond question, if we are to regard, as we should do, only the matters presented in a form equivalent to what is, in our system of jurisprudence, considered legal evidence. The plaintiff shows by sworn affidavits giving what are said to be actual facts and figures derived from its past experience that even at existing rates it has not been able to escape an annual deficit, and that at the proposed reduced rates it would be compelled either to cease operations altogether or to operate at a loss which would spell inevitable bankruptcy. Of course it is impossible in advance of a trial to say whether the facts stated are accurate, or the conclusions drawn from them justified; but on this motion the defendants make no effort to analyze the statements made in plaintiff's affidavits, or to point to any fallacies in their deductions. On the other hand, the papers presented by defendants in opposition to the motion consist almost wholly of conclusions, expressed ex cathedra by a number of persons who fail to show either the facts upon which their conclusions rest or their own competency to form and express an opinion. Some are sworn, and some unsworn; but, assuming, as I do, that, whether sworn or unsworn, the documents express the real opinions of the persons offering them, they are still valueless as evidence. There are also a number of affidavits, drawn in identical form, and verified by independent taxicab owners, who say that since May, 1912, they have voluntarily operated their cabs at the reduced rate, and have been able to keep their cabs in good condition and repair, together with its accessories, and in addition have made sufficient profit to pay the living expenses of themselves and families. These affidavits are at least as notable for what they omit to say as for what they say. No figures whatever are given as to the cost of the investment, the expense of operation, or the average receipts, nor is any allowance made for the salary of a driver. Such affidavits constitute a most unsatisfactory answer to the detailed and explicit statements presented by the plaintiff.

This seems to me to be peculiarly a case in which an injunction pendente lite should issue. It must be conceded that the outcome of a judicial inquiry, confined to legal evidence, as to the reasonableness of the scale of fares prescribed by the ordinance is at least doubtful, and it is manifest that, if the plaintiff ultimately succeeds, the injury to him resulting from an interim enforcement of the ordinance will far outweigh any injury to the public consequent upon a temporary suspension of the operation of the ordinance. There are no statistics at hand; but it is evident that the users of taxicabs must constitute but a very small percentage of the whole population of the city. The existing rates have been in force ever since motor cabs came into use, and little harm will be done to any one if they are allowed to stand for the very short time that need elapse before the action can be brought to trial. It is a case for the application of the rule thus formulated in Harriman v. Northern Securities Co. (C. C.) 132 Fed. 464:

"The balance of convenience or hardship ordinarily is a factor of controlling importance in cases of substantial doubt existing at the time of granting or refusing the preliminary injunction."

The order appealed from should be reversed, and the motion to continue the injunction pendente lite granted.