THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* JAMES JACKSON, Appellant.

Fourth Department, January 5, 1939.

*Charles S. Wilcox,* for the appellant.

*Daniel J. O'Mara, District Attorney [Clarence J. Henry, Assistant District Attorney,* of counsel], for the respondent.

LEWIS, J. We review a judgment of conviction entered upon the verdict of a jury which found the defendant guilty, upon circumstantial evidence, of the crime of criminal negligence in connection with the death of two of his companions. It will give direction to our inquiry to consider at the outset the statutory

definition of the crime with which we are to deal and the rule governing convictions upon circumstantial evidence.

By chapter 733 of the Laws of 1936 the Legislature added the following new section to the Penal Law:

" § 1053-a. Criminal negligence in operation of vehicle resulting in death. A person who operates or drives any vehicle of any kind in a reckless or culpably negligent manner, whereby a human being is killed, is guilty of criminal negligence in the operation of a vehicle resulting in death."

A conviction under that statute requires proof which establishes beyond a reasonable doubt that the death of a person has resulted from the operation of a vehicle by the defendant in a reckless or culpably negligent manner. If that proof is by means of circumstantial evidence the facts from which the inference of the defendant's guilt is drawn must be established with certainty; they must be inconsistent with his innocence and must exclude to a moral certainty every other reasonable hypothesis. (*People* v. *Giordano,* 213 N. Y. 575, 580; *People* v. *Galbo,* 218 id. 283, 293; *People* v. *Suffern,* 267 id. 115, 127; *People* v. *Lewis,* 275 id. 33, 39; *People* v. *Woltering,* Id. 51, 61.)

The accident with which we are concerned occurred in the town of Brighton, Monroe county, while the defendant and his two companions, Quentin Lee and Myron Carver, were riding in the front seat of an automobile owned by the defendant's mother. The indictment later found against the defendant charged him under the statute quoted above with being the operator of the automobile and as the case developed that particular charge became the chief issue. Although the defendant, who alone survived the accident, testified that he was not operating the car at the time, the jury convicted him upon circumstantial evidence offered by the People to prove that he was in fact the operator. Our problem is to determine whether the circumstantial evidence thus offered upon that point excluded to a moral certainty every other reasonable hypothesis. Were the facts, from which the jury drew its inference of guilt, established with certainty?

On the evening of December 2, 1937, the defendant, then aged sixteen, accompanied by his friend Quentin Lee, drove his mother's LaSalle sedan to the home of Myron Carver, who was to accompany them to a high school society meeting. Although there is no question that the defendant drove the car until he and Lee arrived at the Carver home, there is a sharp controversy as to who drove the car after that time. Upon that subject the defendant testified that he had never been to the Carver home before that evening and

that upon arriving at the correct street he found the Carver house by reading the name on the mail box located near the street on the opposite side of the lot from the driveway. The defendant says that on the way to the Carver home Lee had expressed a desire to drive the Jackson car. The defendant did not then accede to Lee's request but waited until the car stopped in front of the Carver home near the mail box. At that point, according to the defendant's testimony, while he and Lee waited for Carver, Lee left the car by the right door, re-entered by the left door and took the driver's seat behind the wheel after the defendant had moved from the driver's position slightly to his right to the middle of the front seat. Meantime Carver had entered the car and it is not questioned that thereafter he occupied the outside position on the front seat next to the right door.

In opposition to the defendant's testimony that he was seated between Lee and Carver when the car was driven away from the Carver home and that Lee drove the car at the time of the accident, the following testimony was offered by the People: The witness Rebecca Moody, who was employed in the Carver home, testified that on the evening of the accident, while she and young Carver awaited the arrival of his friends who were to take him to the high school meeting, she heard the sound of an automobile horn and then saw the lights of a car as it entered the Carver driveway. Carver then made a hurried exit to join his friends, and as he did so she heard a brief conversation between them before he entered the car, then a single slam of a car door and the car backed out. She saw no automobile at any time — only the lights of a car as it entered and left the driveway.

As to events which followed, the greater portion of the proof is by the State's witnesses. The Jackson car, en route to the place of the meeting at which its three occupants were due, finally passed along Winton road moving northerly at a high rate of speed. As it entered the block between Claybourne and Monteroy roads three cars were standing on the west side of Winton road facing south. Beyond them to the north an oil service tank was standing close to the easterly curb. The LaSalle passed the three cars in safety but crashed into the rear of the oil tank. The collision was between the right front of the LaSalle and the left rear of the oil tank and was of sufficient force to move the tank ahead twenty feet and partially over the easterly curb. As the tank moved ahead, the Jackson car passed it on the left and, after turning halfway around, came to rest a short distance north of the front end of the tank, facing south and close to the westerly curb — a mass of broken wreckage. The top of the car had been torn from the body,

the chassis was twisted and crushed, the motor broken and scattered and the whole dismembered machine presented a picture of complete demolition.

· The body of Carver, who died before help arrived, was found upon a grass plot between the westerly curb and the sidewalk — about fifteen feet ahead of the wrecked car. The body of Lee, who died within fifteen minutes after help had arrived, was found lying at an angle over the westerly curb along the right side of the automobile. The defendant, who was rendered unconscious, was lying in Winton road, face down, with his head directly to the east and his feet within a few inches of the left side of the wreckage.

The positions of the bodies are described here in more than usual detail because of the emphasis placed upon this branch of the proof by the prosecution. In fact in presenting the case to the jury the district attorney relied upon the theory that the positions in which the bodies were found established beyond a reasonable doubt that the defendant was in the driver's seat and operating the LaSalle car at the time of the collision. That theory — as set forth in the district attorney's brief upon this appeal — is as follows:

It is said that up to the instant when the LaSalle sedan collided with the oil tank the right and left sides of the car were obviously traveling at equal speed. Then came the impact of the right front of the fast moving sedan against the left rear of the standing oil tank. That impact, it is argued, had the effect of slowing the progress of the right side of the car while the momentum of its left side continued, thus causing the rear end of the sedan to swing to its left through a 180 degree arc which brought the car to rest facing south on the opposite side of Winton road just north of the oil tank. It is claimed that the course of the car through a complete half turn before it came to rest is proved by skid marks upon the roadway.

Thus given as a premise the course of the Jackson car after the impact and the positions of the bodies of its three occupants, and conceding that Carver had been seated on the outside or right-hand side of the front seat, the prosecution asserts that as the car swung to its left through an arc of 180 degrees a centrifugal force was exerted toward the right side of the car which acted upon all three occupants — " although " it is suggested, " the middle man was supported to some extent by the occupant on his right, and the driver was supported by both of his companions and by his grasp on the wheel." This centrifugal force, it is claimed, caused Carver to be hurled through the front door to the west, as the car passed the point where his body was found, fifteen feet south of the

wrecked car. Continuing the theory the People claim that " as the car came, or was about to come, to a stop " there was still in the moving mass " sufficient of the force left to throw or drop Lee, the middle man, out of the same door." To reach that conclusion the People argue that " The force [centrifugal force as the car swung around] was neutralized by the jolt of the stop, possibly against the curb, and Jackson, the driver, upon whom it had not acted so strongly, fell out of the left front door, which had been sprung and was hanging open."

We cannot agree with the district attorney that the People have thus proved by circumstantial evidence, which is said to be " convincing beyond a reasonable doubt," that the defendant was the driver of the LaSalle car at the time of the accident. On the contrary, we believe that the mere statement of the above theory and its conclusion — which the jury has accepted and upon which the defendant's conviction rests — is enough to bring it within the condemnation of a rule which has respect gained from age and frequent repetition that " where circumstantial evidence is relied upon, * * * the ultimate fact may not be based on inference upon inference." (*People* v. *Lewis, supra,* p. 39; *Shepherd* v. *People,* 19 N. Y. 537, 545; *People* v. *Fitzgerald,* 156 id. 253.)

What is required of circumstantial evidence, if it is to be effective as a means of depriving a litigant of either personal or property rights, is that there must be no uncertainty as to the facts from which the controlling inferences are to be drawn. (*People* v. *Razezicz,* 206 N. Y. 249, 272; *People* v. *Giordano, supra,* p. 580; *People* v. *Harris,* 136 N. Y. 423, 429.)

In the case before us there was direct evidence from the defendant himself that at the time of the collision Lee was behind the steering wheel operating the car — and in support of that testimony the defendant points to the undisputed proof that while he suffered no marks, bruises or injuries of any kind upon his body between his chin and his knees, Lee suffered a fracture of the breast bone and fractures of the second, third, fourth and fifth ribs close to their juncture with the breast bone.

Failing to obtain direct evidence with which to oppose the defendant's proof, the People have successfully urged upon a jury evidence which has been termed circumstantial, but which, as we view it, lacks the essential qualities of that character of proof. For a single example, if we assume, without deciding, that the theory was sound by which the People's case was submitted to the jury and upon which a conviction has resulted, both the manner and the sequence in which the bodies of the defendant and his two companions were expelled from the careening car were essential

facts to be made certain by competent proof before a conclusion unfavorable to the defendant could be drawn from them. But we find no such proof in the record. Instead of resting that vital conclusion in the case upon facts which were known and were proved to a certainty, as the rules to which we have alluded require, the conclusion, which is now reflected in the jury's verdict, rests upon pure conjecture.

A judgment of conviction thus grounded upon conjecture cannot stand if the administration of criminal justice is to follow rules of long-established law. " Circumstantial evidence * * * consists in reasoning from facts which are known or proved, to establish such as are conjectured to exist; but the process is fatally vicious, if the circumstance from which we seek to deduce the conclusion depends itself upon conjecture." (*People* v. *Kennedy*, 32 N. Y. 141, 146; *People* v. *Fitzgerald*, *supra*, p. 258.)

The judgment should be reversed on the law and the facts and the indictment dismissed.

All concur. Present — SEARS, P. J., CROSBY, LEWIS, CUNNINGHAM and TAYLOR, JJ.

Judgment of conviction reversed on the law and facts and indictment dismissed.