Potter, M.
Defendant Pfingst is charged with operating, and permitting his employees, defendants De Eenzi and Policastro, to operate vehicles as taxicabs for hire, without first having procured the requisite licenses therefor.
De Eenzi and Policastro are severally charged with operating such vehicles and with driving taxicabs without being duly licensed to do so.
The claimed violations of law are founded upon the following provisions of the Administrative Code of the City of New York, namely, clause (a) of paragraph 43-a* of subdivision l of section 436-2.0, as against Pfingst; and clauses (a) and (b) of paragraph 43-a as against the other defendants.
The pertinent portions of clause (a) of paragraph 43-a provide, as follows: “ Any person, who shall permit another to operate or who shall knowingly operate or offer to operate for hire any vehicle as a taxicab, coach, horse drawn cab or sightseeing bus in the city of New York, without first having obtained an appropriate license therefor, shall be guilty of a violation hereof ”.
The relevant parts of clause (b) of paragraph 43-a read, as follows: “ Any person, not having been duly licensed as a driver * * * and who * * * drives or operates for hire, a taxicab, coach, horse drawn cab or sight-seeing bus, in the city of New York, shall be guilty of a violation hereof ”.
Such violations carry penalties of fine, imprisonment or both. It will be perceived that whereas the charge against Pfingst is based upon his operating or permitting others to operate vehicles as taxicabs without having the appropriate license to do so, the charges against his employees are broader, being grounded not only upon their operating vehicles as taxicabs, but also upon their driving taxicabs proper, without being licensed therefor.
The word “ as ” in the phrase “ any vehicle as a taxicab ” appearing in clause (a) of paragraph 43-a, means “ in the character or under the name of ” (Black’s Law Dictionary [4th ed.] p. 145).
*892 Should the charge against Pfingst fall, then perforce, the companion charges against his employees must also fall.
The People contend that Pfingst is running a taxicab fleet under the guise of a private 'livery service. In this, they are supported by the Staten Island Independent Taxi Owners Association, appearing herein as amicus curice. The association’s primary complaint is that Pfingst is guilty of evasion of the law, and thereby is competing unfairly with licensed taxicab owners. Pfingst, it urges, operates free of statutory regulation, whereas its members are held to a strict and onerous inspection and accountability under the law.
The People’s case discloses the following, namely:
Pfingst maintains, for prospective patrons, an office on Bay Street and a booth at the St. George ferry terminal, on Staten Island. The booth bears a sign setting forth the name of Pfingst’s concern (Fox Hills Taxi, Inc.) and its telephone number.
Pfingst’s employees accepted, as passengers, two plainclothesmen of the police hack bureau, at the ferry terminal booth, and conveyed them to their stated destinations. One of the officers, Casey, testified that defendant De Eenzi had not solicited his patronage. Nor had he observed any solicitation of others. The act of conveyance followed upon his own request therefor.
The second officer, Dean, however, stated that when he approached the booth, defendant Policastro inquired whether he desired taxicab service.
Both officers agree that they were conducted, not to a cabstand or to vehicles stationed upon a public street, but to a lot within the precincts of the ferry terminal, whereon in each case, a parked automobile was waiting; a De Soto for Casey and a Plymouth for Dean. Each car was painted black, had no taximeter and carried no mark, legend or sign indicating or suggesting that the vehicle was a taxicab for hire. Upon arriving at their respective destinations, the officers paid the requested fares, and thereupon served the drivers of the vehicles with summonses. Their employer, Pfingst, was thereafter so served at his Bay Street office.
The defendants sought to meet the charges by maintaining that the Pfingst business was solely limited to private auto rental, with no public solicitation for hire, at any time or place.
The defendants adduced the following proof: Since 1946, Pfingst’s concern, Fox Hills Taxi, Inc., has been conducting a private livery business on Staten Island, thereby providing passenger cars for special rental. Its main office and principal base of operation were located on private property on Bay *893 Street. There it ran a station or depot for its automobiles and also a waiting room for patrons. It established the booth on the main deck or concourse of the St. George ferry terminal to facilitate inquiry for its type of. service. The booth was located upon space subleased from the Garfield Management Corporation, tenant under a paramount lease entered into with the City of New York, as landlord. The sublease was approved by the department of marine and aviation of the said city. Moreover, the Pfingst vehicles, at the ferry terminal, were kept on ground subleased from another tenant of the City of New York, namely, Skyport, Inc., upon which lot the cars were parked, refueled, oiled, and to a minor extent repaired. The two subleases expressly restricted the demised areas to a private auto rental service.
The defendants further showed that the Pfingst concern operated a fleet of seven Pymouth cars and one De Soto automobile, all black in color and none equipped with a taximeter. No vehicle bore the word “ taxi ” or carried any token or symbol representing it to be such. From 75% to 80% of the Pfingst business was derived through telephone inquiries for livery service. The remaining patronage originated through personal inquiry and by requests by mail or telegram. Part of the business was run on a passenger credit and charge account basis. Above all, the defendants stressed that at no time had any of the vehicles cruised or plied the public streets, for hire. Nor had the defendants stationed any of the cars at public hack-stands, there inviting patronage. The sole occasions upon which the cars used the hack or taxicab line at the ferry terminal were when patrons were brought there, or incoming ferry passengers were met there by prearrangement. This, in substance, is the defense to the People’s charges.
Are the foregoing facts sufficient to warrant a conviction? The main query may be divided into the following subheadings:
I. Under the statute, are the Pfingst cars unlicensed taxicabs ? If not technically taxicabs, were they used as such?
II. As a corollary to subheading I: — In proving such use as taxicabs, must the People show that the defendants solicited fares upon the public streets and highways?
TTT. In any event, were the acts of transportation in question those of a public carrier?
I.
The Administrative Code, as amended on December 31, 1953 (§ 436-2.0, subd. b, par. 2, cl. [c]) defines a taxicab as“a vehicle carrying a maximum of five passengers for hire in the city, *894 driven by mechanical power, equipped with a taximeter, and licensed pursuant to the provisions of this section
The Pfingst vehicles do not fit within the foregoing definition. The fact that they lack taximeters suffices to exclude them from its scope. However, the absence of meters is not a conclusive factor. Vehicles so unequipped are not expressly exempted from the purview of the licensing provisions. The language of prohibition, quoted ante, is not limited to taxicabs as defined. The terms of proscription are comprehensive enough to embrace any vehicles offered or operated as taxicabs.
Patently, the fact that operators of vehicles label them as private livery automobiles will not relieve them from the licensing regulations, if, in fact, they use their cars as taxicabs. The converse of the proposition would be just as true. For example, where operators of vehicles call them taxicabs, when, in fact, they are not so used, such arbitrary labeling does not alter their true character. The use depends upon the nature of the enterprise, i. e., “ the kind of service performed, and the manner in which it [the enterprise] is conducted”. (International Ry. Co. v. Barone, 246 App. Div. 450, 454.)
On the question of “ label ” and “ use ”, the People apparently rely upon People v. Reser and People v. Betzig, consolidated upon appeal (297 N. Y. 922). Neither case answers the question at bar.
In the Reser case, the defendant offered his vehicle for public use as a taxicab by conspicuously exhibiting thereon a sign reading “ taxi and despite his disclaimer, the facts showed that the actual use matched the displayed label.
In'the Betzig case, a sign bearing the word ‘ taxi ’ ’ was placed on a pillar supporting a railroad trestle. An arrow pointed toward the defendant’s office, which also carried a sign marked “ taxi ”. Evidently, the whole design was such as to lead the public to believe that the vehicle for hire, was offered or operated as a taxicab. Granted, that the vehicle was not technically a taxicab, even then the defendant’s representation that it was, as expressed by his invitation to the public to hire it as such, sufficed to bring his acts within the condemnation of the statute.
In essence, the defendants in the Reser and Betzig cases held themselves out as public carriers (Matter of Motor Haulage Co. v. Maltbie, 293 N. Y. 338, 358; Anderson v. Fidelity & Cas. Co., 228 N. Y. 475, 493).
The sign in the case at bar, hung on the booth at the ferry terminal, merely gave the operator’s name and telephone number. The record stands bare of any proof that the word “ taxi ” forming part of the name was designed to deceive or had actually *895 caused deception. Under such circumstances, any finding that the defendants had, through the use of the sign, practiced deception, would be based upon sheer speculation. Mere conjecture is not proof (People v. Jackson, 255 App. Div. 688, 693; Lopez v. Campbell, 163 N. Y. 340, 347-348). “ Insufficient evidence is, in the eye of the law, no evidence ”. (Matter of Case, 214 N. Y. 199, 203; Lopez v. Campbell, supra, p. 348.) The condemning facts must clearly be inconsistent with innocence (People v. Jackson, supra, p. 689).
The defendants argue that the People must fail unless they show that the defendants were soliciting patronage, for hire, upon the public streets or highways. The defendants claim that this element of proof is pre-eminent; and since the record is devoid thereof, the case against them is fatally defective. To support their position, they rely upon the cases of People v. Cuneen, People v. Forbes and People v. Woods, heard together upon appeal (94 Misc. 509). These cases decided in 1916, were concerned with an ordinance, long since repealed, which, by its express language, prohibited hacks, unlicensed as such and unequipped with taximeters, from plying the public streets, for hire. In the absence of convincing proof that the unlicensed defendants in the said cases were so engaged, they were acquitted.
It is true that prior to 1937, whenever the hacking definitions and regulations set the scene of prohibition, it was “ upon the public streets or highways ”. The gravamen of the offense ordinarily lay in unlicensed solicitation thereon. However, even without such solicitation, conviction followed where the unlicensed vehicle was equipped with a taximeter and driven upon the public thoroughfares for the purpose of conveying passengers. (Cosby’s Code of Ordinances [1914 ed.], pp. 465-466, 468 [1916 ed.], pp. 350-360 [1918 ed.], p. 350; People v. Cuneen, supra, pp. 512, 527.)
Subsequent amendments eliminated a taximeter as required equipment for a taxicab (Local Laws, 1941, No. 54 of City of New York); and so it was until, under a superseding amendment, such meter was again required (Local Laws, 1953, No. 190 of City of New York, June 29,1954 [Local Laws, 1954, No. 12]).
However, the present field of proscription for unlicensed vehicles operated as taxicabs, with or without meters, is far broader than “upon the public streets or highways ”. The scene is now set “ in the city of New York ”. Thus, giving the phrase, last quoted, its ordinary meaning (Matter of Sherrill v. O’Brien, 188 N. Y. 185, 207), the cases relating to the smaller *896 area of prohibition are no longer definitive of or apposite to the question at bar.
No case directly construing the present ambit of the statutory regulations has been brought to the attention of the court or found by it. A case, decided prior to the aforesaid 1953 amendment of the statute, and somewhat proximate to the one at bar, was that of People v. Sullivan (303 N. Y. 757).
In the Sullivan case, the defendant’s principal contention on appeal (parallel to the defendants’ argument in the instant case) was that the prosecution could not succeed unless it first showed that the operator of the unlicensed vehicle for hire had solicited patronage upon the public streets or highways. The statute then contained, and as we have already observed, now contains no such express prerequisite to conviction. Neither appellate court discussed the defendant’s contention. The Court of Special Sessions (199 Misc. 524) based its reversal of the defendant’s conviction upon the grounds that historically and by the fair intendment of the statute, a private livery business such as the defendant ostensibly conducted, could not be classified as part of the taxicab industry. The Court of Appeals (the People appealing) affirmed, without opinion.
Since the interdicted acts are presently forbidden “ in the city of New York ”, instead of within the erstwhile narrower compass of “ upon the public streets or highways ”, the result would appear to be the same whether operators of unlicensed vehicles solicited the public for hire, on or off the public thoroughfares. Such solicitation, under the clear terms of the statute, would be a violation of the law wherever patronage was sought, so long as the act were done “ in the city of New York ”. The specific place of solicitation within the city no longer being the pivotal factor, evidently, then, the nature of the service itself, offered or rendered, must be.
But even were we to assume in our case, that the ferry terminal booth was located on a public thoroughfare, yet the proof would still be too uncertain and tenuous to support the People’s view that the defendants had there engaged in public solicitation for hire. As appears ante, officer Casey testified that he was not solicited at all, and that he had observed no solicitation of others. Officer Dean, however, stated that defendant Polieastro had asked him whether he wished taxi service. Thus, each officer had a different experience regarding solicitation. The testimony of one is, therefore, counterweighed by that of the other. In this evenly balanced state of the record, the defendants’ firm denial of solicitation at any time or place is, manifestly, entitled to great weight.
*897 ni.
Was the unlicensed service, tendered or performed by the defendants, of the type offered or rendered by public carriers ? If it was, then the defendants have broken the law.
The taxicab industry has been impressed by statute with a public interest. It was so vested because it was considered to be a vital and integral part of the transportation facilities of the City of New York (Administrative Code, § 436-2.0, subd. a, par. 1).*
Thus far, however, an exclusively private livery business, though it carry passengers upon the public streets and highways, has not been declared to be so clothed or affected (Terminal Taxicab Co. v. District of Columbia, 241 U. S. 252, 256; Yellow Taxicab Co. v. Gaynor, 82 Misc. 94, 106, affd. 159 App. Div. 893).
The proof in the case at bar more clearly supports the view that the defendants were only proffering or performing acts of transportation under special calls, charters or agreements. Of course, all acts of transportation, in a sense, are restricted and special, in that even a common carrier, as a practical matter, cannot serve all of the public at any given time. “ The public does not mean everybody all the time ” (Terminal Taxi Co. v. District of Columbia, supra, p. 255). However, there is a palpable distinction between the public carrier’s duty to answer all calls for service as far as able and the private carrier’s privilege to serve or not to serve, at will.
Under the circumstances, to find that the defendants violated the law would be tantamount to holding that the legislative power as reflected in the Administrative Code, could, with impunity, transform defendant Pfingst or his concern from a private to a public carrier (Matter of Motor Haulage Co. v. Maltbie, 293 N. Y. 338, 358, supra; Frost Trucking Co. v. Railroad Comm., 271 U. S. 583, 592). Such forced investiture with a public interest, as already observed, would be contrary to applicable and controlling case law.
It is not to be gainsaid that since the use of the public streets and highways for gain and profit is an extraordinary one, the police power, may, in order to promote the general good, fix certain regulations as the price or toll for such special use (Matter of Rudack v. Valentine, 163 Misc. 326, 330, affd. 274 *898 N. Y. 615; Stephenson v. Binford, 287 U. S. 251; Yellow Taxicab Co. v. Gaynor, 159 App. Div. 893, 895, supra; People v. Rosenheimer, 209 N Y. 115). However, some reasonable regulations of private carriers are one thing (Stephenson v. Binford, supra, pp. 265-267); but forcing requirements upon them that are fitting for public carriers alone, is quite another (Michigan Comm. v. Duke, 266 U. S. 570, 577-578; Smith v. Cahoon, 283 U. S. 553, 562-563; Frost Trucking Co. v. Railroad Comm., supra). For example, as suggested ante, the private carrier is not required to serve upon request (Terminal Taxicab Co. v. District of Columbia, supra, p. 255). The licensed operator of a taxicab reasonably must (Administrative Code, § 436-2.0, subd. f, par. 24, cl. [b]).
One of the basic canons of construction has always been that the true legislative intent is the key to the meaning of a statute; and so it is with ascertaining the meaning of the provisions of the Administrative Code (Wiley v. Solvay Process Co., 215 N. Y. 584, 588-589; Matter of Sherrill v. O’Brien, 188 N. Y. 185, 207, supra). Whatever the code’s language, the literal wording must be read in the light of its spirit, lest the business of defendant Pfingst suffer destruction (82 C. J. S., Statute § 325, pp. 613, 618-619; Matter of United Parcel Service v. Joseph, 272 App. Div. 194, 201, affd. 297 N. Y. 1004; Morgan v. Hedstrom, 164 N. Y. 224, 230). Should the purpose of the statute be so stretched as to have it cover the business run by Pfingst, and thus, he be held to be operating a taxicab fleet instead of a private automobile rental service, then, perforce, he would be compelled to terminate an enterprise in existence since 1946. For, it is common knowledge in and out of the taxicab industry that no taxicab licenses, generally referred to as “ medallions ”, are now being issued. In fact, a moratorium is presently in force; for the power to regulate includes the power not alone to prohibit (Yellow Taxicab Co. v. Gaynor, 159 App. Div. 893, 895, supra), but also to limit (Matter of Rudack v. Valentine, 163 Misc. 326, affd. 274 N. Y. 615, supra). The density and continuity of traffic do not augur well for the early lifting of the suspension. Thus, to weigh the probabilities as to when and how many new licenses might henceforth be made available to taxicab fleet owners not as yet licensed would be idle and speculative (Administrative Code, § 436-2.0, subd. c. par 11, cl. [a]).
Whatever else, being penal in character, the statutory provisions must be strictly construed (64 C. J. S., Municipal Corporations, § 1798, p. 261). A fortiori, when the violation of law is malum prohibitum. “ Purely statutory wrongs can *899 not be established by implication, and ‘ acts' otherwise innocent and lawful, do not become crimes, unless there is a clear and positive expression of the legislative intent to make them criminal. The citizen is entitled to an unequivocal warning before conduct on his part, which is not malum in se, can be made the occasion of a deprivation of his liberty or property ’ ” (People v. Harms, 308 N. Y. 35, 39; People v. Phyfe, 136 N. Y. 554, 559); and the sufficiency of such warning must be measured by common understanding and practices (Jordan v. De George, 341 U. S. 223, 231-232; Connolly v. General Const. Co., 269 U. S. 385, 391). Therefore, unless the unlicensed use of the vehicles, in the case at bar, clearly offends the statute, a conviction cannot stand (People v. Heckman Trucking Co., 277 N. Y. 480).
Whether a charge involves a crime or a mere offense, the proof thereof must be beyond a reasonable doubt. (People v. Bellows, 170 Misc. 66, 68; Code Crim. Pro., § 389.)
In view of the foregoing, it is my conclusion that the People have failed to overcome the hypothesis of innocence. Accordingly, defendants’ motions to dismiss are granted; and they are discharged.

 Paragraph 43-a, mentioned in People’s complaint, renumbered 41-a by Local Laws of 1954, No. 126.

 Vide Report of Joint Legislative Committee on Taxicab Operation and Fares, March 2, 1936, New York Legislative Documents, 1936, No. 83; also Recommendation of Mayor LaGuardia’s Committee on Taxicab Survey, appended as Exhibit D to the aforesaid report.