Robert J. Trainor, J.
This is an appeal by the defendant from a conviction in the Court of Special Sessions of the City of Yonkers, for allegedly violating Ordinance 16 —1951 as amended March 27, 1962, in that on April 30, 1962, at about 10:25 b.m., he did operate a taxicab within the City of Yonkers without being properly licensed so to do.
The facts, as gleaned from the trial minutes, appear to be as follows:
The defendant claims he operates a ‘ ‘ private limousine ’ ’ service in the City of Yonkers from an office located on private property and, when not in use, the car in question is parked on a private lot and not on a public thoroughfare. The defendant does not cruise the streets of the city soliciting business, but obtains requests for service by telephone. The vehicle contains a two-way radio so that if the car is away from the office when a request for service is received, it can be contacted by someone in the office and directed to the desired location. At the time of the alleged offense, the vehicle in question bore New York registration plates 8241-31, 1962, issued by the Motor Vehicle Commissioner of the State of New York, and the accompanying registration certificate issued from the same source is stamped across the face ‘ ‘ private rental, ’ ’. The vehicle was not equipped with a taximeter nor did it exhibit a medallion such as is issued to taxicabs by the Public Safety Commissioner of the City of Yonkers.
On the evening of April 30, 1962, at about 10:25 p.m., two Yonkers policemen, in plain clothes, caused a telephone call to be made to defendant’s office requesting that a car be sent to the Homestead Grill on Wells Avenue, Yonkers. In due course the defendant arrived and was directed by the two passengers to take them to the Royal Arms Hotel, also in the City of *871 Yonkers. Upon arrival at the destination the defendant asked for, and received, a stipulated fare (the amount of which does not seem to be questioned), and, thereupon, the defendant was given a summons by one of his passengers for operating a taxicab without being licensed pursuant to ordinance.
There can be no question regarding the power of a municipality to regulate the operation of taxicabs within its boundaries. Section 1604 of the Vehicle and Traffic Law, which prohibits the enactment of local ordinances in conflict therewith, expressly states: “Provided, however, that the power given to local authorities to license and regulate vehicles offered to the public for hire * * * shall remain in full force and effect.” From where does the City of Yonkers derive the ‘ ‘ power * * * to license and regulate vehicles * * * for hire ”? The most natural source of such power would be the city’s charter but, apparently, the charter is silent in this regard. The next logical source would be the General Municipal Law, and there we find, section 181, that municipalities “may adopt ordinances regulating the registration and licensing of taxicabs ”.
Section 148-a of the Vehicle and Traffic Law defines a taxicab as: “ A motor vehicle having a seating capacity for passengers of not more than seven persons, in addition to the driver, and used in the business of transporting passengers for compensation, but not including those vehicles which are considered omnibuses solely by reason of the provisions of subdivision four of section three hundred seventy of this chapter.” The excepted vehicles are the “ drive yourself ” rental cars.
Webster’s New International Dictionary of the English Language, Second Edition, unabridged (1960), defines taxicab: “ n. A passenger-carrying vehicle, usually a motor vehicle designed to seat five or seven passengers, with or without a taximeter, maintained for hire on public thoroughfares or at public stations or stands, but not operated on a schedule; orig. short for taximeter-cab-taxicab, v.i.” (Emphasis supplied.)
Ordinance No. 16 —1951, as amended, which the defendant is charged with having violated, reads as follows: “Article I, Section 1(c). Taxicab shall mean and include any vehicle engaged in the business of carrying persons for hire, whether operated by radio-telephone or electronic equipment of any type, for the purpose of receiving and relaying designated proposed passenger information, whether the same is operated from a street stand or from or in a railroad station or subject to call from a garage, office or other place of business, except vehicles subject to the provisions of the Transportation Corporations *872 Law of the State of New York, or vehicles used as private ambulances or by undertakers in the course of their business or by others for specially planned religious, civic, social and allied functions. Section 2. This ordinance shall take effect after due publication as required by law. ’ ’ The ordinance was passed by the Common Council on March 27, 1962 and, although the record does not indicate, it will be assumed that it was duly published so as to be effective on April 30, 1962, the date of its alleged violation.
The language of the Yonkers ordinance is so broad and all-inclusive that a liberal construction thereof would compel the inclusion of what are known as 11 private rental ” or “ private livery” vehicles, and is even broad enough to include “ drive yourself ’ ’ vehicles. Did the framers of the ordinance intend this result, and, if they did, were they legally empowered so to do? There is no doubt that if this ordinance is lawful, its literal interpretation would effectively abolish the operation of private rental car services in the City of Yonkers. Does the city, merely by the process of definition, have the power to change the entire concept and operation of an otherwise lawful business or, in the alternative, abolish it? I think not, although this is not to say that a private rental business may not be reasonably regulated by a municipality. It may be regulated but not converted into an entirely different business under the guise of regulation.
Despite the clear and unambiguous language of article I, section 1(c), I cannot believe it was intended to define a private rental car as a taxicab, because elsewhere in the record reference is made to article II, section 9, General Ordinances, No. 1 — 1962, adopted January 9,1962, which, allegedly reads as follows: “ Operators of any vehicle or taxicab used for private or public rental shall register in the office of the Commissioner on such forms as are duly provided for that purpose ” (emphasis supplied). This would indicate that a distinction between private rental vehicles and taxicabs is recognized, otherwise the use of the words “ vehicle ” and “ private ” separated from “ taxicab ” and “ public ” by the disjunctive “ or ” would be meaningless, and no ordinance should be so construed as to be futile and meaningless.
It is a matter of general knowledge that many people, particularly those living in apartment houses, in view of the high cost of car maintenance, garage and insurance rates, have given up owning ears and rely for their requirements on private car rental services. An appealing feature of this service is that the vehicle looks just like a private oar, no signs, no medallions, *873 no taximeters, no framed licenses and photographs, etc. One may pick up friends and take long or short trips and the fact that the car is a rented one is not apparent to anyone. There is testimony in the record that at least one person has been in the private car rental business in Yonkers for 50 years, so, it is not a “ Johnny-come-lately ” institution.
“ The hackmen who ply the streets for hire are because of that fact engaged in a public employment which naturally and necessarily differentiates their position from that of private livery men.” (Emphasis supplied.) (Yellow Taxicab Co. v. Gaynor, 82 Misc. 94, 181; Munn v. Illinois, 94 U. S. 113.)
‘ ‘ A private carrier is one who holds himself out as carrying only for those persons with whom he may choose to contract. The distinction between a common or public carrier of persons and a private or special carrier of the same is that it is the duty of the former, within the limits of its ability, to receive all persons who apply for a passage, while the latter does not operate under any such duty.” (37 Am. Jur., Motor Transportation, § 4.)
At this point it should be noted that the Yonkers’ ordinance under attack, which seems to include private rental vehicles, provides in article IX, section 7, that a taxicab driver may not refuse to carry passengers who seek his services except in one specific situation.
“ The state may not by mere legislature fiat or edict, by regulating orders of a commission, convert mere private contracts or a mere private business into a public utility, or make its owner a common carrier.” (37 Am. Jur., Motor Transportation, § 4.)
1 ‘ In the final analysis, the question whether a given operator of motor vehicles for hire is a common carrier or a private carrier depends on the facts of the case; and under varying circumstances and statutory provisions particular operators of motor vehicles have been held to be or have been held not to be private or contract carriers in the light of the statutes and the nature of the services performed.” (60 O. J. S., § 47, subd. a, pp. 213-214.)
Litigation resulting from the difference between taxicabs and private rental vehicles, and the application of regulatory laws to one but not the other, is not of recent origin. The cases are legion and many of them have been ably digested and discussed in briefs submitted by both counsel. It would serve no useful purpose to attempt to discuss all of them here. However, I think the cases of People v. Cuneen (94 Misc. 509); Matter of Motor Haulage v. Maltbie (293 N. Y. 338) and People v. Pfingst *874 (1 Misc 2d 890) are interesting, pertinent and informative. The Cuneen case was one of three considered at the same time by the Court of General Sessions of New York County, involving the alleged violation of a city ordinance regulating ‘ ‘ hacks, cabs and taxicabs ’ ’.
The specific question raised in Cuneen, and its companion cases, was whether the driver of a vehicle not licensed and equipped in accordance with the ordinance, who solicits passengers for hire within a railroad station, or who answers a call sent to a private garage, etc., is guilty of a violation of the city ordinances regulating the public hack business. Among other things the ordinance required every public hack (taxicab) to be equipped with a taximeter. The Yonkers ordinance makes the same requirement. In reaching its determination that the defendants were not guilty and that the convictions must be reversed, the court reviewed the history of hackneys (taxicabs), from the times of the earliest reported cases in England, which pointed up the distinctions between hacks and private rental vehicles. Two of such distinctions (p. 514) were that a railroad station was a private place, as opposed to a public thoroughfare, and that hackmen (taxicab drivers) were compelled to accept anyone who desired to hire them whereas private rental drivers were under no such compulsion. (Case v. Storey, L. R. [4 Ex.] 319.) The court cited with approval (pp. 519-520) the language of Haverty’s Taxicabs v. Mitchel (159 N. Y. S. 965, 966-967) as follows: “ The ordinance being constitutional, the enforcement of it will not be enjoined insofar as it applies to motor vehicles soliciting patronage upon the street or which are operated from a private garage and having meters attached. But it seems to me that no construction can be put upon this amendment that will justify interference with unlicensed motor vehicles which are called from private garages and which do not have meters attached.' * * * I cannot see how those operating from a private garage on call without a meter can possibly be considered as being one of these defined by the ordinance ’ ’. Further excerpts from the Cuneen case are (pp. 525-526): “ The manner in which the business is conducted determines whether it is a private or public hack business within the definition of the ordinances. * * * fío a private liveryman may not, under the guise of conducting a private business, engage without a license in a public hack business * * * in the private livery or garage business the conveyance is sought by the passengers at the private property of the owner and not on the streets. * * * Their selection may be *875 due to the convenience of maintaining a charge account, because of a preference for a particular kind of vehicle or by reason of confidence in the drivers employed ”. The Motor Haulage Co. case, although involving the carriage of goods rather than passengers, exhaustively researches the law which indicates the recognized distinction between public and private carriers. Although the ordinance in the Pfingst case is not worded precisely as the Yonkers ordinance, the essential facts are strikingly similar. In the Pfingst case, as in this one, two plain-clothes policemen hired the vehicles for the designed purpose of obtaining transportation, paying a fare, and then issuing a summons. Another coincidence is that the real complainant in the Pfingst case was the Staten Island Independent Taxi Owners Association while here the defense claims that the amended ordinance was sponsored by the Yonkers Taxi Association in an effort to eliminate the competition of private rental operators. In that case the court again reviewed the distinction between taxicab and private rental operations, held that the defendants fell within the latter category, and reversed their convictions. The court made this sage observation (1 Misc 2d 890, 898): “ One of the basic canons of construction has always been that the true legislative intent is the key to the meaning of a statute * *. Whatever the code’s language, the literal wording must be read in the light of its spirit, lest the business of defendant Pfingst suffer destruction * * *. Should the purpose of the statute be so stretched as to have it cover the business run by Pfingst, and thus, he be held to be operating a taxicab fleet instead of a private automobile rental service, then, perforce, he would be compelled to terminate an enterprise in existence since 1946. For, it is common knowledge in and out of the taxicab industry that no taxicab licenses, generally referred to as ‘ medallions ’, are now being issued.” (According to the record, Yonkers only authorizes 90 medallions, considerably fewer than smaller cities in Westchester County, all of which have been issued.)
It is obvious that a literal enforcement of the present ordinance would effectively abolish the private car rental business of the defendant, and all others similarly situated, in the City of Yonkers. Its provisions travel in an all-encompassing circle. It defines all vehicles carrying passengers for hire as taxicabs and then prescribes the equipment required on each vehicle, such as taximeters, medallions, lettering, license frames, photographs of drivers, etc. No private rental vehicle can remain *876 such and comply with the ordinance — there is utter incompatibility.
In its decision, the court below states: 1 ‘ While recognizing the distinction between a private rental service and a taxicab business, the court finds that the facts as disclosed by this record indicate that on the night in question the defendant was operating a taxicab, as defined by Article I of the ordinance.” Since the court recognized a distinction between taxicabs and private rental vehicles it is difficult to understand how the defendant could be guilty on the record. The stipulated facts in the record were, with respect to this incident, that the defendant maintains an office for the conduct of his business at 35 South Broadway; that his vehicle, when not on call, is garaged or parked on private property; that the vehicle in question is black, without a light, without a sign or legend of any kind on the outside indicating that it is for hire. In other words, it does not contain any of the equipment required of a taxicab by the ordinances. It was further stipulated that a call was made to defendant’s office requesting that a car be sent to the Homestead G-rill (which was done), that the passengers were taken to Royal Arms Hotel, and they paid a fee for the service. This is an accurate description of a private car- rental operation. Therefore, if such a business is recognized as lawful, there was no violation of law under the stipulated facts. The decision goes on: “ Having determined that the car was in fact a taxicab, then there can be no question the City of Yonkers has the power to enact reasonable regulations”. However, the court had already stated that it recognized the distinction between a private rental vehicle and a taxicab, and since the stipulated facts made a clear case of a private rental operation in the questioned transaction, the only justification the court would have for declaring the vehicle a taxicab would have to rest upon the fact that the vehicle was carrying passengers for hire, was not equipped with a taximeter, domelight, medallion, etc., and yet was a taxicab as defined in the ordinance. This would appear to be completely circuitous.
It is the opinion of this court that insofar as the ordinance in question mandates that a private rental vehicle be equipped with a taximeter, domelight, medallion and all of the other equipment required on vehicles well-known and commonly recognized as “ taxicabs ”, it effectively, by fiat, destroys the legitimate business of private car rental and, to that extent it is unconstitutional. “ There is a broad difference, however, between regulation and prohibition”. (People v. Gilbert, 68 Misc. 48, *877 53.) “When regulation becomes destruction, it ceases to be regulation.” (Eighth Ave. Coach Corp. v. City of New York, 286 N. Y. 84, 94.)
The judgment of conviction is reversed on the law and the facts and the fine of $25 is remitted.